IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| 5171 CAMPBELLS LAND CO., INC., | Bankruptcy No. 19-22715-CMB |
| Debtor, | Chapter 11 |
| 5171 CAMPBELLS LAND CO., INC., | Document No. |
| Movant, vs. | |

NO RESPONDENT.

### VERIFICATION OF JOHN W. TEITZ IN SUPPORT OF THE DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF THE COMPASS ADVISORY PARTNERS, LLC AS CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* AS OF JULY 8, 2019

Pursuant to Bankruptcy Rule 2014 John W. Teitz declares:

1.  I am a Director of Compass Advisory Partners, LLC ("Compass"), which has offices at 306 fourth Avenue Suite 701, Pittsburgh, Pennsylvania 15222, and as such, am duly authorized to submit this declaration on behalf of Compass (the "Teitz Declaration") in support of the Application of the Debtor to Retain and Employ Compass Advisory Partners, LLC as Chief Restructuring Officer, Nunc Pro Tunc as of July 8, 2019 (the "Application").[1] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.  Compass is an established financial advisory services firm with extensive experience in bankruptcy and reorganization proceedings, including, without limitation, representing debtors, debtors in possession, trustees, creditors and creditors'

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

committees, and others in chapter 11 and chapter 7 cases. Its practice also spans also many other areas of business, including, a wide variety of companies, industrial manufacturing and distribution companies and various retail and service companies. Compass is also experienced in negotiating with secured lenders, landlords, vendors and unsecured parties. These negotiations typically relate to DIP loans, plans of reorganization, mergers/acquisitions, asset sales transactions and related corporate finance/restructuring activities that benefit all parties.

3. Compass' professionals (including me) have been engaged in numerous chapter 11 cases filed in, but not limited to, the U.S. Bankruptcy Courts located in Pittsburgh, PA; Erie, PA; Scranton, PA; Youngtown, OH; Columbus, OH; Wheeling, WV; and Lexington, KY.

4. I will be serving as the Chief Restructuring Officer (CRO) and will be assisted by other Compass personnel on an as-needed basis. I have considerable experience as a turnaround manager, management consultant, financial advisor and CRO, providing leadership and/or management for underperforming companies desirous of change through financial restructuring or asset sales – primarily on a "going-concern" basis to maximize recoveries to all creditors.

5. Compass is well-suited for the type of representation required by the Debtor, insofar as the firm possesses extensive investment banking and financial advisory experience, including, among other things, dealing with the various financial issues facing distressed and insolvent businesses of similar size and complexity as the Debtor's business (27 Perkins restaurants. As a result, Compass is well qualified to serve as the Chief-Restructuring-Office for the Debtor in this case.

## Professional Services To Be Rendered

6. As described in greater detail in, and subject to the terms of, the Engagement Letter, and subject to the Court's approval of the Application, the Debtor has engaged Compass to serve as Chief Restructuring Officer to the Debtor in connection with the turn-around efforts and financial restructuring of the Debtor's business via this Chapter 11 case.

## Disinterestedness of Compass

7. Prior the within engagement, which has been effectuated by William T. Kane on behalf of the Debtor, Compass engaged in confidential discussions with one of the Debtor's minority shareholders, Ronald Linaburg and his legal counsel, Mark Santos in anticipation of providing restructuring services to the Debtor. These discussions and various meetings started in October 2018 and continued into 2019 but did not result in Compass's retention or any compensation. During these confidential discussions, Compass was provided with financial information regarding the company and met with the management team. Additionally, prior to the within engagement, Compass engaged in confidential discussions with Store Capital, the Debtors Primary Lender and Landlord, regarding a potential retention as a receiver for the Debtor. These discussions started in June of 2019 and did not materialize into an engagement.

8. Based on the results of the search conducted by Compass, as described more fully below, and based on my understanding of the Bankruptcy Code, the Bankruptcy Rules and the practices being followed in other chapter 11 cases, to the best of my knowledge, none of Compass's officers or employees thereof, or I, has any connection with the Debtor, its creditors, other parties-in-interest (as reasonably known

to us), their respective attorneys, the U.S. Trustee or any person employed in the Office of the U.S. Trustee or the Bankruptcy Judge presiding over this case, except as set forth in paragraph 7.

9. To the best of my knowledge, Compass is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code, in that (a) Compass is not a creditor, equity security holder or insider of the Debtor; (b) Compass is not and was not, within two years of the Petition Date, a director, officer or employee of the Debtor; and (c) Compass does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtor or for any other reason.

10. Compass conducted a search of its client's database for relationship with parties who may be impacted or involved in this chapter 11 case. These parties (the "Interested Parties") were identified by the Debtor and are listed on the attached Schedule 1. In the past, Compass has worked on matters unrelated to this Debtor or this chapter 11 case with the commercial banks and lenders that are listed on Exhibit 1. Compass's prior engagement by these Interested Parties in matters unrelated to the Debtor or this chapter 11 case will not impact Compass's engagement in this chapter 11 case. Compass may have negotiated with other Interested Parties in other bankruptcy or workout cases, but has never been retained, nor has worked directly for, those persons or entities. Compass does not and will not represent any of these parties in connection with this chapter 11 case.

11. The entities disclosed herein have been identified by Compass using its reasonable efforts. The Schedule of Interested Parties may have changed without our knowledge and may change during the pendency of the chapter 11 case. Compass will periodically review its files during the pendency of the chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Compass will use reasonable efforts to identify such further developments and will promptly file a supplemental Teitz Declaration. Compass believes that its connections with such other persons in unrelated matters would not affect its representation of the Debtor in this proceeding

12. Compass is engaged in numerous transactions involving many different attorneys, accountants, investment bankers, investment and other funds and financial consultants, some of which may represent claimants and parties-in-interest in this chapter 11 case. Furthermore, Compass may have in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom might be involved in this proceeding. In addition, Compass has in the past, and likely will in the future, be working with other professionals involved in this case in matters unrelated to the Debtor or this chapter 11 case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of those business relations or potential business relations constitutes interests materially adverse to the Debtor herein in matters upon which Compass is to be employed.

13. To the best of my knowledge, Compass has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this chapter 11 case. If this Court approves the proposed employment of Compass

by the Debtor, Compass will not accept any engagement or perform any services for any entity or person other than the Debtor in this situation. Compass may, however, continue to provide professional services to entities or persons that may be parties in interest in the chapter 11 case; provided, however, that such services do not relate to, or have any direct connection with, this chapter 11 case.

14. In sum, Compass does not believe that its relationship with any of the identified parties-in-interest will adversely affect its engagement by the Debtor in the chapter 11 case.

## Professional Fees and Expenses

15. The Engagement Letter and the Application accurately describe the manner in which Compass will be compensated for its services in its roles as financial advisor and investment banker for the Debtor.

16. As more fully set forth in the Engagement Letter, Compass's fees for professional services are based upon its standard hourly rates. The hourly rates set forth below are subject to periodic increases in the normal course of business, often due to increased experience of a particular professional. Compass will give prior notice to the Debtor of any such periodic increase:

1. Nicholas Arrington        $325.00/hr.
2. John W. (Jack) Teitz      $375.00/hr.
3. Jim Battaglia             $325.00/hr.
4. Aimee Rice                $275.00/hr.
5. Tom Kuehl                 $225.00/hr

In addition to the fees just described, the Debtor has also agreed to reimburse Compass for its reasonable out-of pocket expenses incurred in connection with the Engagement Letter, including, but not limited to, costs for travel, accommodations, business meals, telecommunications, messengers, couriers

and other fees which may arise from time-to-time in this case. Reimbursement is subject to approval by the Debtor and the Bankruptcy Court.

17. The fees and expense reimbursement arrangement described herein are consistent with Compass's normal and customary billing practices for companies of the Debtor's size and complexity.

18. Compass intends to apply to this Court for allowances of compensation for professional services and reimbursement of expenses incurred in this case in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules and orders of this Court.

19. Compass has agreed to accept as compensation such sums as may be allowed by the Court on the basis of (a) the professional time spent, (b) the rates charged for such services, (c) the necessity of such services to the administration of the estate and (d) the reasonableness of the time within which the services were performed in relation to the results achieved.

20. Compass understands and acknowledges that in the event the Court approves its retention by the Debtor, Compass's fees and expense shall be subject to the jurisdiction and approval of the Court under sections 327(a) and 328(a) of the Bankruptcy Code and any applicable fees and expense guideline order.

## Disclosure of Compensation

21. Compass has not shared or agreed to share any of its compensation in connection with this matter with any other person.

22. No promises have been received by Compass, or by any employee thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

Date: July 10, 2019

_____
John W. Teitz
Compass Advisory Partners, LLC

## Verification Schedule 1

### INTERESTED PARTIES

1. **PNC BANK – DEBTOR's BANK ACCOUNTS**

2. **PNC BANK – DEBTOR's LINE OF CREDIT**

3. **HUNTINGTON NATIONAL BANK – DEBTOR's BANK ACCOUNTS**