# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 19-22715-CMB |
| 5171 Campbells Land Co., Inc., | |
| Debtor. | Chapter 11 |
| United States Trustee, | |
| Movant, | |
| v. | Related to Dkt. No. 34 |
| 5171 Campbells Land Co., Inc., | |
| Debtor-Respondent. | |

## OBJECTION OF STORE CAPITAL ACQUISITIONS, LLC AND STORE MASTER FUNDING XIII, LLC TO UNITED STATES TRUSTEE'S EXPEDITED MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE

STORE Master Funding XIII, LLC ("STORE Master") and STORE Capital Acquisitions, LLC ("STORE Capital" and together with STORE Master, "STORE"), by its undersigned counsel hereby file this objection (the "Objection") to the United States Trustee's ("UST") *Expedited Motion for Appointment of Chapter 11 Trustee* [Dkt. No. 34] (the "Motion"), [1] in support hereof, state the following:

**I. BACKGROUND**

1. On July 8, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. STORE Master is the owner of nonresidential real property listed on **Exhibit A** in which the Debtors lease property (the "Premises") pursuant to a certain master lease agreement and certain individual lease agreements (the "Leases").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3. Debtor, as a licensee and operator of Perkins Restaurant & Bakery locations, was party to license agreements (the "License Agreements") with Perkins & Marie Callender's Inc. ("PMC"). Pursuant to the License Agreements, Debtor operates 27 Perkins restaurants (the "Restaurants") in Ohio, Pennsylvania, and New York, including restaurants in each of the Premises.

4. STORE owns the Premises containing 22 of the 27 Restaurants.

5. Prior to the Petition Date, Debtor defaulted under the terms of the License Agreements.

6. Based on Debtor's default under the License Agreements, and based on Debtor's apparent inability to immediately cure the default, PMC granted Debtor a temporary license allowing Debtor to continue to operate the Restaurants as Perkins restaurants.

7. On or about June 3, 2019, based on continued breaches of the License Agreements and failure to comply with the terms of the temporary license, PMC terminated the temporary license for all of the Restaurants.

8. Further, based on Debtor's default and the termination, PMC served Debtor with a de-identification letter informing Debtor that it must, *inter alia*, immediately cease identifying the Restaurants as Perkins or former Perkins restaurants, cease using PMC's trademarks, and alter the physical interior and exterior décor of the Restaurants to sufficiently de-identify them as Perkins restaurants.

9. PMC initiated litigation against Debtor on June 27, 2019 by filing a complaint in the U.S. District Court for the Western District of Tennessee. In addition to claims for breach of the License Agreements and related damages, PMC sought temporary, preliminary, and permanent injunctive relief, filing a motion for temporary restraining order and preliminary injunction.

10. On July 2, 2019, PMC obtained a temporary restraining order against Debtor (the "TRO") providing, *inter alia*, Debtor is

> restrained from competing activities within a 3-mile radius of each Restaurant or within a 3-mile radius of any Perkins restaurant operated by PMC or any other licensee of PMC . . .; restrained from continuing to directly or indirectly identify the Restaurants as current or former Perkins restaurants, or as franchisees or licensees of, or as otherwise associated with PMC . . . ; [required to] take such action to alter the physical interior and exterior decor of the Restaurants (specifically including, but not limited to, removing distinctive

> architectural features of or on the building) as will effectively de-identify and distinguish the Restaurants from the PMC Perkins' brand.

The temporary restraining order further set a preliminary injunction hearing for July 8, 2019—the Petition Date.

11. Since the Petition Date, Debtor filed its *Application for Approval of Compass Advisory Partners, LLC as Chief Restructuring Officer* Nunc pro Tunc *as of July 8, 2019* (the "CRO Application"). *See* Dkt. No. 16. A hearing on the CRO Application is currently scheduled for August 9, 2019. *See* Dkt. No. 18.

12. Further, since the Petition Date, Debtor and PMC reached an agreement that would allow Debtor to operate the Restaurants pursuant to a new temporary license (the "Post-petition Temporary License").

13. The terms of the agreement relating to the Post-petition Temporary License are outlined in the Stipulation and Consent Order (the "Consent Order") filed by Debtor and PMC on July 12, 2019. *See* Dkt. No. 28.

14. Specifically, pursuant to the Post-petition Temporary License, Debtor will be permitted to operate 17 of the 27 Restaurants as Perkins restaurants until the earlier of the date PMC enters into a new license agreement for the specific locations and (b) August 10, 2019. *See* Dkt. No. 28.

15. Further, pursuant to the Consent Order, Debtor will be permitted, once it succeeds in de-identification, to operate 10 of the Restaurants as non-Perkins restaurants. *Id.*

16. On July 12, 2019, the UST filed the Motion seeking appointment of a chapter 11 trustee over the Debtor's bankruptcy estate. Dkt. No. 34.

17. UST argues that the appointment of a chapter 11 trustee is in the best interest of all of Debtor's creditors. *Id.* at 54.

18. In the Motion, UST requests that the Court refrain from entering the Consent Order until a ruling has been entered on the Motion. *Id.* at ¶ 18.

## II.   ARGUMENT

### A.   Immediate Appointment of Trustee is Not in the Best Interest of Creditors

19. In light of the pending CRO Application, UST's concerns regarding the alleged need for "an independent fiduciary to work for the benefit of **all** creditors" is unfounded. *Id.* at ¶ 54

(emphasis in original).  The proposed chief restructuring officer will serve the needs of the Debtor and the estate to the benefit of creditors without the added expense, and attendant time delays, of employing a chapter 11 trustee.

20. STORE believes that the best possible outcome for all creditors in this case, and specifically the more than one thousand employees currently in limbo, is a speedy sale or other mechanism that would effectuate a transfer of Debtor's assets in the next 30 days to a new operator that can assume or enter into new leases and licensing agreements and continue to operate the Restaurants as Perkins restaurants.

21. Appointment of a chapter 11 trustee to "investigate the financial affairs of the Debtor" is an unnecessary step that will do nothing more than cause any speedy sale or transfer process to grind to a halt while a trustee is appointed and granted time to get up to speed on this relatively straight-forward case.

22. In addition to the pending CRO Application, PMC and Debtor have already taken the first step towards teeing up a speedy transfer of the Debtor's assets.  The Post-petition Temporary License will allow Debtor to operate all of its Restaurants, most as Perkins, until Debtor, PMC, and other stakeholders can coordinate a sale of Debtor's assets to a new operator to lease the Restaurants and enter new license agreements with PMC.  The Consent Order allows the Debtor to prevent the Restaurants from going dark while at the same time preserving the jobs of Debtors' employees.

23. If entry of the Consent Order is delayed pending appointment of a chapter 11 trustee, the most likely outcome is catastrophe.  Debtor, which is barred from operating the Restaurants as Perkins by the TRO and barred from operating as any other restaurant within 3 miles of its prior Perkins locations, would have no choice but to cease all operations, lay off its employees, likely convert to chapter 7 and face a liquidation that will result in minimal payment to creditors.

24. Any concerns the UST has about the Debtor and its prepetition activities can be addressed through the appointment of an examiner at a later date, when the granting of such a motion will not undercut the best possible outcome for the Debtor, the estate, and the creditors.

**B.    Reservation of Rights**

25. This Objection is based on the limited information STORE has been able to obtain and analyze in the three (3) days since the Motion was filed.

26. Based on the tightly compressed objection period regarding the Motion, and the limited information available, STORE expressly reserves the right to supplement and/or amend this Objection from time to time and at any time. STORE further reserve any and all rights to raise any additional objections with respect to the Motion or otherwise with respect to any relief requested as it may affect the Leases or STORE's interests.

**WHEREFORE,** STORE respectfully requests that this Court enter an order: (a) sustaining STORE's Objection to the Motion; and (b) granting STORE such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:  7/15/19            By:    /s/ James F. Grenen
                                  James F. Grenen, Esquire
                                  PA ID No. 46478
                                  Grenen & Birsic, P.C.
                                  One Gateway Center, 9th Floor
                                  Pittsburgh, PA  15222
                                  412-281-7650

                                  And

Dated: July 15, 2019 .       BALLARD SPAHR LLP

/s/ Michael A. DiGiacomo
Craig Solomon Ganz (admitted *pro hac vice*)
Michael A. DiGiacomo (admitted *pro hac vice*)
ganzc@ballardspahr.com
digiacomom@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor,
Philadelphia, PA 19103

*Attorneys for STORE Master Funding XIII, LLC and STORE Capital Acquisitions, LLC*