# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 5171 CAMPBELLS LAND CO., INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 19-22715-CMB |

## REVISED STIPULATION AND CONSENT ORDER

AND NOW come 5171 Campbells Land Co., Inc. ("Debtor") and Perkins & Marie Callender's, LLC ("PMC" and together with Debtor, the "Parties"), by and through their counsel, and file this Revised Stipulation and Consent Order (the "Revised Stipulation") as follows:

## RECITALS

### The Parties

1.  PMC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee.

2.  Debtor is a Pennsylvania corporation which filed a voluntary petition (the "Petition") under Chapter 11 of the United States Bankruptcy Code on July 8, 2019 (the "Bankruptcy Case").

### The PMC System and Marks

3.  Since 1958, PMC and or its predecessors-in-interest and through its licensees has developed a business system for establishing, operating, and licensing distinctive, fast-casual restaurants serving the public under the name "PERKINS" or "Perkins®" (and Design) (hereinafter referred to collectively as "Perkins").

4.  The food, beverage, and other products served and sold by Perkins restaurants are prepared in accordance with PMC's unique techniques, special equipment and processes, standards and specifications, products, and other methods (the "System").

5. Each restaurant is also designed pursuant to PMC's plans and specifications for construction, conversion, remodeling, decorating, equipment and layout, and is operated in accordance with PMC's distinctive business formats, construction plans, inspection and consultation programs, signs, flags, equipment, layouts, methods, specifications, standards, recipes, confidential information, trade secrets, operating procedures, training programs and materials, guidance, policy statements and related materials, designs, advertising, publicity, marketing programs, and other materials.

6. On June 7, 1966, PMC obtained from the United States Patent and Trademark Office ("USPTO") a federal trademark registration for its Perkins trademark, U.S. Registration No. 809,680 for use on "restaurant services."  In addition, PMC owns, uses, promotes, and licenses certain federally-registered trade names, trademarks, service marks, and other commercial symbols and applications related thereto, including U.S. trademark registrations (collectively, the "Marks").

7. There are 371 Perkins restaurants operated in 32 states and five Canadian provinces. The Perkins system includes 117 company-owned and operated restaurants and 254 franchised units.  PMC has invested substantial time, skill, effort, and money in developing, promoting, and advertising its unique System and in the development and protection of its Marks and trade names.

8. As a result of PMC's advertising, marketing, promotional, and other efforts, the Perkins' Marks have gained widespread recognition and customer goodwill for providing the highest standards of quality and hospitality in the restaurant industry.

9. PMC provides its unique services to the general public through authorized licensees/franchisees through licensing agreements.

10. Debtor was among the system of authorized licensees and, after receiving PMC's training, utilized the benefits of the Marks and System in operation of their Perkins licensed units

in territories that included the states of the State of Ohio, the Commonwealth of Pennsylvania, and the State of New York.

**The License Agreements**

11. On February 13, 2017, Unique Ventures Group, LLC ("Unique") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code at Case No. 17-20526-TPA in the United States Bankruptcy Court of Western Pennsylvania (the "Unique Case").

12. Unique was licensee of twenty-eight (28) Perkins restaurants pursuant to License Agreements by and between the Debtor and Perkins (the "Unique License Agreements").

13. On March 23, 2017, M. Colette Gibbons (the "Trustee") was appointed as the Chapter 11 Trustee for Unique.

14. Among other things, the Trustee was charged with the responsibility of selling Unique's assets which consisted primarily of the Unique License Agreements.

15. On October 30, 2017, the Trustee filed a motion to sell and assign substantially all of Unique's assets, including the Unique License Agreements.

16. At a hearing and auction conducted by the judge in the Unique Case, on January 9, 2018, Debtor was identified as having submitted the highest and best offer for the Unique's assets.

17. On January 29, 2018, an order was entered in the Bankruptcy Case approving the sale of substantially all of the Unique's assets, including the Unique License Agreements, to Debtor.

18. In connection with this closing, Debtor signed twenty-seven (27) License Agreements (one "License Agreement" and collectively with all attachments, addendums and amendments, "License Agreements") with PMC for non-exclusive licenses to operate twenty-seven (27) Perkins franchise units in Ohio, Pennsylvania, and New York.

19. Each of the License Agreements contain identical language defining the terms, conditions, rights, and obligations between the Parties.

20. The License Agreements permitted Debtor to operate their Perkins units at the following locations in Ohio, Pennsylvania, and New York, identified by store numbers and names (the "Restaurant" or, collectively, the "Restaurants"):

| Store | Name | City/State |
|---|---|---|
| 2474 | Warren (Niles) | Warren, OH |
| 2537 | New Castle | New Castle, PA |
| 3346 | Clarion | Clarion, PA |
| 3382 | Ashland | Ashland, OH |
| 3383 | Ashtabula - Prospect | Ashtabula, OH |
| 3388 | Canfield - E Main Street | Canfield, OH |
| 3448 | Titusville - Central Ave. | Titusville, PA |
| 3458 | Erie – East | Erie, PA |
| 3459 | Erie – South | Erie, PA |
| 3460 | Erie – West | Erie, PA |
| 3463 | Greenville - Hadley Road | Greenville, PA |
| 3464 | Grove City - W. Main Street | Grove City, PA |
| 3466 | Indiana | Indiana, PA |
| 3474 | Hermitage (Sharon) | Hermitage, PA |
| 3495 | Warren - Elm Rd. | Warren, OH |
| 3523 | Corry - Columbus Ave. | Corry, PA |
| 3525 | Bradford - Bolivar Dr. | Bradford, PA |
| 3531 | Olean - State Street | Olean, NY |
| 3572 | Warren - Ludlow St. | Warren, PA |
| 3573 | Conneaut - Rt 20 W Conneaut Pl | Conneaut, OH |
| 3604 | Meadville | Meadville, PA |
| 3670 | Youngstown - Boardman | Youngstown, OH |
| 3709 | Middleburg Heights (Cleveland) | Middleburg Heights, OH |
| 3730 | Mars (Cranberry Township) | Cranberry Township, PA |
| 3731 | Canton | Canton, OH |
| 3794 | Austintown | Austintown, OH |
| 3844 | Brooklyn | Brooklyn, OH |

21. A copy of a representative License Agreement is attached hereto as Exhibit 1.

22. The License Agreements gave Debtor non-exclusive licenses to operate the Restaurants and to use the PMC System and the Marks in their operation, under specific terms and conditions which created specific rights and obligations.

23. Under Section 4.A. of the License Agreements, Debtor acknowledged that its right to use the Marks was derived from the License Agreements and was limited to their operation of the Restaurants pursuant to and in compliance with the License Agreements. Further, Debtor agreed that all of their usage of the Marks and any goodwill established by their use of the Marks was to the exclusive benefit of PMC.

**Default and Termination of the License Agreements and the Temporary License**

24. Soon after the License Agreements were executed, Debtor defaulted under the terms of the Agreement. Those defaults included:

   a. use of unapproved products in the Restaurants and

   b. failure to pay royalties and marketing funds.

25. A Notice of Default was provided by PMC to Debtor on May 4, 2018, informing Debtor, among other things, that the License Agreements would terminate thirty (30) days from the date of receipt by Debtor of the Notice of Default unless all past due amounts were paid on or before the termination date. A copy of the May 4, 2018 Notice of Default is attached hereto as Exhibit 2.

26. Debtor failed to make the payments, and the License Agreements terminated on June 5, 2018.

27. That same day, Debtor's representative drove to Memphis to meet with a team of PMC representatives to discuss Debtor's defaults under the License Agreements. During that meeting, the parties reached an understanding that PMC would (i) permit Debtor to hold a temporary license to continue operating the Restaurants as Perkins restaurants so long as certain

conditions were met, and (ii) consider reinstating the terminated License Agreements subject to certain conditions, including providing financial statements for each Restaurant, becoming current with royalty and Marketing Fund contributions, and obtaining documents related to equipment vendors and ongoing remodels. That agreement was memorialized in a Letter of Understanding, a copy of which is attached hereto as Exhibit 3.

28. Subsequently, Debtor defaulted under the terms of the temporary license.

29. On October 25, 2018, PMC sent a letter to Debtor providing notice of those defaults outlining necessary steps to cure defaults and stating that failure to cure payment defaults would result in termination of the temporary license.

30. Over the next few months, Debtor attempted to address PMC's notices and requirements and remedy its breaches. PMC, in good faith, and in reasonable reliance on Debtor's purported good faith, endeavored to continue the Parties' business relationship under temporary license, with the terms of the License Agreements incorporated therein.

31. Nevertheless, defaults continued under the temporary license, and the Grove City – W. Main Street, PA Restaurant was closed temporarily for two (2) days by the Pennsylvania Bureau of Food Safety and Laboratory Services due to health and safety deficiencies related to on-going construction which was mandated by local municipal authorities.

32. Finally, on June 3, 2019, PMC provided Debtor with a Notice of Termination of Temporary License letter for all Restaurants (the "June 3 Notice of Termination") and, on June 4, 2019, issued a De-Identification letter (the "De-Identification Letter") pursuant to Section 16 of the License Agreements. True and correct copies of the June 3 and 4, 2019 letters are attached hereto as collective Exhibit 4.

33. The June 3 Notice of Termination summarized the Parties' correspondence and course of dealing as discussed above and stated that, as a result of Debtor's failure to meet the conditions set forth in the Letter of Understanding, including the failure to pay amounts owed to PMC, PMC was terminating the License Agreements, as incorporated into the temporary license. As of the date of the June 3 Notice of Termination, PMC alleged that Defendants owed:

|   |   |   |   |
|---|---|---|---|
| a. | Royalties | $742,913.29; |
| b. | Deferred Royalties | $757, 656.50; |
| c. | Marketing Contributions | $609,934.65; |
| d. | Transfer Fees | $54,000.00. |

Thus, as of June 3, 2019, PMC asserted that Debtor owed PMC $2,164,504.29 (collectively with accruals since June 3, 2019 and other claims arising under the License Agreements, the "Claims"). The Debtor disputes the amount of the Claims and reserves its right to object to the Claims.

34. Among other things, the De-Identification Letter reminded Debtor of its post-termination obligations, e.g., that Section 16. of the License Agreements requires Debtor to pay to PMC all sums due and owing within 15 days of termination and to take various additional steps including all steps necessary to cease identifying itself as a current or former Perkins restaurant/franchise.

35. To that end, PMC also reminded Debtor of its need to schedule personnel to visit the Restaurants to ensure compliance with the de-identification obligations and requested information regarding Debtor's plans, including a timeline, to de-identify the facilities.

**Violation of CLC's Post-Termination Obligations and Irreparable Harm to PMC**

36. After receiving the June 3 Notice of Termination and the De-Identification Letter, Debtor did not comply with their contractual post-termination obligations.

37. Specifically, Debtor failed to make required payments and continued to operate all twenty-seven (27) Restaurants as Perkins Restaurants, thereby using misappropriating PMC's System and Confidential Information and infringing upon PMC's Marks for its own benefit and in direct competition with other Perkins corporate and franchise restaurants.

38. PMC has a substantial interest in preventing Debtor from misappropriating its System and Confidential Information and infringing upon its Marks.

39. It is vitally important to the Perkins franchise system, and all other authorized Perkins licensees/franchisees, that Debtor not be allowed to operate Perkins restaurants without authorization and in direct competition with authorized Perkins license/franchise owners using the System, Confidential Information, and Marks provided to Debtor by PMC.

40. In order to protect its important rights under the License Agreements, PMC filed a Verified Complaint seeking temporary and permanent injunctive relief at Docket No. 2:19-cv-02414-JPM-dku in the United States District Court for the Western District of Tennessee (the "TN Action").

41. After a hearing in the TN Action on July 2, 2019, a Temporary Restraining Order and Notice of Hearing was issued (the "TRO"). A copy of the TRO is attached hereto as Exhibit 5.

42. Among other things, the TRO granted the requested temporary restraining order stating that:

    a. Debtor breached and continued in breach of the License Agreements.

    b. absent entry of the TRO, PMC will continue to suffer immediate and irreparable harm.

    c. PMC has no adequate remedy at law.

    d. Debtor is restrained

       i. from competing with each Restaurant.

       ii. using PMC's confidential information.

       iii. continuing to identify itself as current or former Perkins restaurants, franchises or licensees or using the Marks.

    e. Debtor shall remove from the Restaurants and uniforms various display items and items which display or contain any PMC trademarks or otherwise relate to a Perkins restaurant.

    f. Debtor shall take all other actions as necessary to effectively de-identify and distinguish the Restaurants from the Perkins brand.

    g. Scheduled a hearing for July 8, 2019, to determine if the TRO should be converted to a Preliminary Injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure (the "PI Hearing").

43. Debtor has failed to comply with the terms of the TRO.

44. On July 8, 2019, prior to the PI Hearing, the Debtor filed the Petition commencing the Bankruptcy Case.

45. Since the Petition was filed, Debtor and PMC have engaged in negotiations and have reached an agreement as outlined herein.

## AGREEMENT

46. The License Agreements, including the temporary license, were properly terminated prior to the commencement of the Bankruptcy Case.

47. The License Agreements, including the temporary license, are not property of Debtor's bankruptcy estate.

48. Without further order of this Court, PMC may enter into new license agreements with third parties for any or all of the Restaurants: provided, however, that PMC does not hereby obtain any right to Debtor's FF&E, small wares, or possession of Debtor's leased premises. Whatever rights, if any, PMC has to Debtor's FF&E, small wares and possession of Debtor's leased premises are reserved.

49. With regard to Store Numbers: 2537, 3383, 3388, 3448, 3460, 3572, 3573, 3730, 3731, and 3844 listed on pages 4 and 5 herein (the "De-commissioned Restaurants"), Debtor shall immediately upon entry of this Consent Order, commence compliance with the TRO (including closing the De-Commissioned Restaurants and removing all exterior signage and identification at the De-Commissioned Restaurants).

50. PMC agrees that as long as Debtor has complied with the terms of the TRO within ten (10) business days from the entry of this Consent Order, Debtor is not barred from operating any other restaurant which is not similar to a Perkins Restaurant at the locations of the De-Commissioned Restaurants. Whether a restaurant is similar to a Perkins Restaurant will be determined in accordance with Section 16.A of the License Agreements.

51. Pursuant to a temporary license, Debtor shall be entitled to operate the Restaurants other than the De-Commissioned Restaurants (the "Remaining Restaurants") until the earlier of (a) the date(s) when PMC enters into new license agreements with third party licensee(s) and (b) August 10, 2019 (the "Termination Date").

52. Debtor shall permanently be subject to all of the restrictions and restraints specified in items a. through m. on pages 2 and 3 of the TRO (a) as to the Decommissioned Restaurants, immediately upon entry of the Consent Order and (b) as to the Remaining Restaurants and subject to Paragraph 50, upon the Termination Date.

53. Within 3 business days of the entry of this Consent Order, Debtor and PMC shall file a joint motion or notice in the TN Action stating that the Parties have agreed to the jurisdiction of the Bankruptcy Court, attaching this Revised Stipulation and dismissing the TN Action.

54. The automatic stay under Section 362 of the United States Bankruptcy Code is terminated to the extent that it is necessary to allow PMC to act pursuant to this Order.

55. Subject to review of certified financial statements and other relevant considerations, PMC will, in good faith, consider entering into mutual releases with William T. Kane and Krissy Kochis, who guaranteed Debtor's obligations to PMC.

56. <u>Representations and Warranties</u>: The Parties each represent and warrant to the other that:

   a. <u>Full Knowledge</u>. They fully understand all the terms of this Revised Stipulation.

   b. <u>Own Judgment</u>. They have made and entered into this Revised Stipulation based on their judgment, and not that of the other.

   c. <u>Competence</u>. They are competent to sign this Revised Stipulation.

   d. <u>Independent Legal Advice</u>. They have received independent legal advice, or had the opportunity to obtain independent legal advice, from a qualified attorney of their choice regarding the advisability of signing this Revised Stipulation.

   e. <u>No Other Representation</u>. In entering into this Revised Stipulation, they: (1) have relied solely on the statements expressly set forth herein; (2) have not placed any reliance whatsoever on any statement, representation, or promise by the other or by any other person or entity that is not expressly set forth or referenced in this Revised Stipulation; (3) have not made this Revised Stipulation in reliance upon the failure of the other or any other person or entity to make any statement, representation or disclosure of anything whatsoever; and (4) have included this clause to preclude the introduction of parole evidence to vary, interpret, supplement, or contradict the terms of this Revised Stipulation.

   f. <u>Authority</u>. Each person executing this Revised Stipulation represents and warrants that he or she has authority to bind the entity or entities on behalf of whom he or she executes this Agreement.

57. **<u>Court Approval/Notice</u>.**

   a. **<u>COURT APPROVAL</u>. THIS REVISED STIPULATION IS SUBJECT TO APPROVAL OF THE COURT AFTER APPROPRIATE NOTICE.**

   b. **<u>NOTICE</u>. UPON THE FILING OF THIS REVISED STIPULATION, DEBTOR SHALL IMMEDIATELY SERVE A COPY OF THIS REVISED STIPULATION ON THE MAILING MATRIX. PER THE COURT'S TEXT ORDER DATED JULY 15, 2019, A PRELIMINARY HEARING TO APPROVE THIS REVISED STIPULATION HAS BEEN SCHEDULED FOR FRIDAY, JULY 19, 2019 AT 10:00 A.M. ALL OBJECTIONS TO THIS REVISED STIPULATION MUST BE FILED ON OR BEFORE JULY**

**29, 2019. ANY OBJECTIONS FILED IN ADVANCE OF THE JULY 19, 2019 HEARING WILL BE HEARD AT THAT TIME. IF ANY OBJECTIONS NOT RAISED PRIOR TO THE JULY 19, 2019 HEARING ARE FILED ON OR BEFORE JULY 29, 2019, THE COURT WILL ADDRESS THOSE OBJECTIONS AT A HEARING ON JULY 31, 2019 AT 10:00 A.M. IN THE EVENT THAT NO OBJECTIONS ARE FILED ON OR BEFORE JULY 29, 2019, THIS CONSENT ORDER SHALL BECOME FINAL.**

c. Governing Law; Jurisdiction.  The validity, interpretation, and legal effect of this Revised Stipulation shall be governed by the laws of the Commonwealth of Pennsylvania without regard to the principles of conflicts of law. Jurisdiction and Venue for any suit relating to the enforcement of this Revised Stipulation shall be in the Bankruptcy Court.  Survival of Warranties.  All representations and warranties contained in this Revised Stipulation shall survive its execution, effectiveness, and delivery.

d. Further Instruments.  The Parties shall each (i) execute and deliver such further instruments, documents, or papers and perform all such acts necessary, proper or reasonably requested to carry out and effectuate the terms of this Revised Stipulation as may be reasonably requested by any party hereto, and (ii) cooperate with each other in the drafting and execution of such additional instruments, documents or papers.

e. No Presumption From Drafting.  Because each of the Parties have had the opportunity to draft, review, and edit the language of this Revised Stipulation, no presumption for or against any of the Parties arising out of drafting all or any part of this Revised Stipulation will be applied in any action relating to, connected to, or involving this Revised Stipulation.

f. Benefits Successors. This Revised Stipulation shall be binding upon, and shall inure to the benefit of, each of the Parties and their respective parent corporations, companies, subsidiaries, divisions, Affiliates, Insiders, related entities, shareholders, members, directors, officers, agents, representatives, servants, employees, independent contractors, partners, insurers, attorneys, predecessors, successors and assigns.

g. No Right of Revocation. THIS REVISED STIPULATION IS NOT SUBJECT TO REVOCATION.

h. Headings.  The headings to the sections of this Revised Stipulation are inserted for convenience only and will not be deemed a part hereof nor affect the construction or interpretation of the provisions hereof.

i. No Third-Party Beneficiaries. The Parties each agree that this Revised Stipulation is intended and executed for their sole benefit and the benefit of those additional parties falling within the categories of parties generally specified above,

including, but not limited to, subparagraph g above.  Neither of the Parties contemplates or intends for this Revised Stipulation to extend to any third-parties and expressly agree that this Revised Stipulation does not inure to the benefit of any third-parties.

        SO ORDERED this _____ day of July, 2019.

        BY THE COURT

        _____
        Carlota Böhm
        Chief Bankruptcy Judge

*[CONSENTS ON FOLLOWING PAGE]*

Consented to this 17th day of July, 2019.

| s/ Robert O Lampl | s/ Joel M. Walker |
|---|---|
| Robert O Lampl | Joel M. Walker |
| PA ID #19809 | PA ID #26515 |
| Ryan J. Cooney | Duane Morris LLP |
| PA ID #319213 | 600 Grant Street |
| 223 Fourth Ave., 4th Floor | Suite 5010 |
| Pittsburgh, PA  15222 | Pittsburgh, PA  15219 |
| Phone:  (412) 392-0330 | Phone:  (412) 497-1042 |
| Email:  rlampl@lampllaw.com | Email:  jmwalker@duanemorris.com |
| Attorneys for 5171 Campbells Land Co., Inc., Debtor | Attorneys for Perkins & Marie Callender's, LLC |