UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

5171 CAMPBELLS LAND CO., INC.

    DEBTOR.

5171 CAMPBELLS LAND CO., INC.,

    MOVANT,

    v.

NO RESPONDENT.

CASE NUMBER: 19-22715 CMB

CHAPTER 11

Related to doc. no. 16

Hearing Date and Time:
August 9, 2019 10:00 AM

Response Deadline:
July 29, 2019

# OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION FOR APPROVAL OF COMPASS ADVISORY PARTNERS, LLC AS CHIEF RESTRUCTURING OFFICER

Andrew R. Vara, Acting United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to the Debtor's Application for Approval of Compass Advisory Partners, LLC ("Compass") as Chief Restructuring Officer (the "Application"), and in support of his objection respectfully states as follows:

## BACKGROUND

1. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

The U.S. Trustee is specifically authorized to monitor retention applications filed under 11 U.S.C. § 327 and, whenever the U.S. Trustee deems it appropriate, to file comments about such applications with the Court. *See* 28 U.S.C. § 586(a)(3)(I).

2.  The U.S. Trustee has standing to be heard on the Application pursuant to 11 U.S.C. § 307.

3.  On July 8, 2019, the Debtor filed a chapter 11 petition in this Court.

4.  The Debtor is a Pennsylvania corporation that had engaged in the operation of approximately 27 Perkins Restaurants as franchisee.

5.  The petition initiating this case was signed by William T. Kane, President of the Debtor.

6.  On July 10, 2019, the Debtor filed the Application.

7.  Attached to the Application is the Verification of John W. Teitz, a director of Compass, at ¶ 4 which represents that "I [Mr. Teitz] will be serving as the Chief Restructuring Officer (CRO) and will be assisted by other Compass personnel on an as-needed basis." References to Compass hereafter should be interpreted to include Mr. Teitz, and *vice versa*, unless otherwise noted.

8.  The Application identifies the proposed services to be performed by Compass at ¶ 3. Compass would be engaged to oversee, *inter alia*: the commencement of the chapter 11 filing, completion of schedules and statement of financial affairs, the development of a strategy to upgrade or sell the debtor's restaurants, the development of a budget, negotiations with the Debtor's lender, landlord and franchisor, development of an operating plan, oversight and control of cash receipts and disbursements, bankruptcy reporting, evaluation of offers to

purchase the debtor, review of claims and causes of action, and formulation of a plan and disclosure statement. Further,

> Compass [A]dvisory Partners shall have full authority regarding the following:
> a. The hiring and firing of all employees and other budgetary matters . . . ; and
> b. The approval of all payments to vendors, professionals and other payments . . .

Application, ¶ 4.

9. In other words, Compass will be in total control of the Debtor and displace the Debtor's management.

10. Exhibit "A" to the Application is an engagement letter between Compass and the Debtor. The engagement letter (p. 3, ¶ p) provides that Compass "shall report to the [Debtor's] attorneys [, the Debtor's] president and to the Bankruptcy Court during this Chapter 11 process."

11. The Verified Statement of John W. Teitz Doc. No. 16 states:

> 7. Prior the within engagement, which has been effectuated by William T. Kane on behalf of the Debtor's minority shareholders, Ronald Linaburg and his legal counsel, Mark Santos in anticipation of providing restructuring services to the Debtor. These discussions and various meetings started in October 2018 and continued into 2019, but did not result in Compass's retention or any compensation. During these confidential discussions, Compass was provided with financial information regarding the company and met with the management team. Additionally, prior to the within engagement, Compass engaged in confidential discussions with Store Capital, the Debtor's primary lender and Landlord, regarding a potential retention as a receiver for the Debtor. These discussions started in June of 2019 and did not materialize into an engagement.

12. On July 12, 2019, the U.S. Trustee filed his motion for the appointment of a chapter 11 trustee. (Doc. No. 34.)

13. The United States Trustee has not yet appointed a creditors' committee in this case. A committee formation meeting is scheduled for August 1, 2019.

## ARGUMENT

14. The Application fails to cite to statutory authority for the retention of Compass. The Application does not state that the retention is under 11 U.S.C. § 327(a) or § 363.

15. In either case, the United States Trustee objects because Compass cannot meet the criteria under either section of the Bankruptcy Code.

*Lack of Disinterestedness*

16. Section 327(a) governs the retention of professional persons. Specifically, that section provides for the retention of professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]"

17. 11 U.S.C. § 101(14) defines "disinterested person" to mean a person that -

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason[.]

18. A chapter 11 debtor cannot employ professionals who are not disinterested. *See, e.g., United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141

4

(3d Cir. 1994) ("[T]he power of a debtor in possession to employ accountants or other professionals . . . is specified by Section 327(a) . . . . [T]he debtors in this case could not employ accountants or other professionals who were not 'disinterested.'"). *Id.*

19. "Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 of the Bankruptcy Code, 'professionals.' " *In re Madison Management Group, Inc.,* 137 B.R. 275, 283 (Bankr.N.D.Ill.1992). When employment is proposed for one of these positions, the procedures required by § 327 should be followed in order to further the policies of ensuring that employed persons are impartial and that the costs and administrative expenses of a case remain subject to judicial oversight. *In re Copenhaver, Inc.,* 506 B.R. 757, 761–62 (Bankr. C.D. Ill. 2014)

20. Mr. Teitz and Compass cannot be approved under Section 327(a) because they do not meet the statute's disinterestedness requirement. As chief restructuring officer, Mr. Teitz would be an "officer." As the person who would make all decisions regarding the Debtor's bankruptcy case, he would be the equivalent of a director and certainly in control of the Debtor. As an officer, director, or person in control, he is an insider. *See* 11 U.S.C. § 101(31)(B)(i)-(iii).

21. "The Court takes seriously any allegation that professionals involved in cases before it are conflicted or have acted unethically. *See, e.g., In re Universal Bldg. Prods.*, 2010 WL 4642046 (Bankr.D.Del. Nov.4, 2010) (disqualifying counsel for creditors' committee because of improper solicitation); *In re eToys, Inc.,* 331 B.R. 176, 194 (Bankr.D.Del.2005) (disallowing fees of counsel for debtors and committee because they had undisclosed conflicts of interest). Further, a conflict of interest may result in a finding that a plan of reorganization has not been proposed in good faith. *See, e.g., In re Coram Healthcare Corp.,* 271 B.R. 228,

5

234–40 (Bankr.D.Del.2001) (denying confirmation because a conflict of interest arising from the relationship between the Debtor's chief executive officer and largest creditor tainted the entire reorganization effort)." *In re Washington Mut., Inc.*, 442 B.R. 314, 326 (Bankr. D. Del. 2011).

22. By his Affidavit, Mr. Teitz disclosed his ties with parties-in-interest in this case. He was engaged in confidential discussions with one of the Debtor's minority shareholders, Ronald Linaburg and his legal counsel, Mark Santos in anticipation of providing restructuring services to the Debtor from October 2018 and into 2019. On February 25, 2019, L-Four, L.P., and Ronald G. Linaburg, D.M.D. filed a Complaint in Mandamus against 5171 Campbells Land Co., Inc., 5171 Campbells Land Co., LLC; William T. Kane; and Robert E. Dauer, Jr. (GD-19-002405) alleging *inter alia* mismanagement of 5171 under the leadership of Mr. Kane.

23. By his Affidavit, Mr. Teitz spent a considerable amount of time from October 2018 into 2019 engaged in "confidential discussions with Store Capital, the Debtors Primary Lender and Landlord." Store Capital filed a Complaint against the Debtor June 12, 2019 alleging breach of contract and sought the appointment of a receiver.

24. After obtaining *confidential* information from Plaintiff litigants adverse to the Debtor, Mr. Teitz thereafter seeks control of the Defendants of that litigation through retention as a CRO—with authority to determine whether or not to object to the claims of those same creditors. It is clear that Mr. Teitz is not "disinterested."

25. Mr. Teitz engaged in *confidential* discussions with creditors prior to their litigation against the Debtor, and now Mr. Teitz has taken that inside confidential knowledge to that creditor's adversary; therefore, the United States Trustee contends that Mr. Teitz has an actual conflict of interest.

26. The term "actual conflict of interest," . . . is defined largely on a case-by-case basis—by examining the specifics of the facts of a given situation. *In re BH & P Inc.*, 949 F.2d 1300, 1315 (3d Cir.1991) (upholding finding of an actual conflict of interest where there was "the possibility that the parties would favor one estate over the other in their attempt to serve all of them"). The law in the Third Circuit is that "[s]ection 327[a] presents a per se bar to the appointment of a law firm with an actual conflict, and gives the district court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict." *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 477 (3d Cir.1998) (*citing In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir.1991)); *In re Pillowtex, Inc.* 304 F.3d 246, 252 (3d Cir.2002). *See also In re Congoleum Corp.*, 426 F.3d 675 (3d Cir.2005)." *In re Harris Agency, LLC*, 451 B.R. 378, 389 (Bankr. E.D. Pa. 2011), aff'd sub nom. *In re The Harris Agency, LLC*, 462 B.R. 514 (E.D. Pa. 2011).

27. "A conflict is deemed actual, and *per se* disqualifying, if "it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir.2002) (citation omitted). Usually, professionals with a potential conflict of interest also are not approved for employment. *In re 22 Acquisition Corp.*, 2004 WL 870813, at *3 (E.D.Pa. Mar.23, 2004). Because the parameters of section 327 insure that employees of an estate do not have divided loyalties, they are strictly enforced. *In re Raymond Professional Group, Inc.*, 421 B.R. 891, 902 (Bankr.N.D.Ill.2009)" *Harris Agency*, 451 B.R. at 389–90.

*A CRO Cannot Act as a de facto chapter 11 trustee*

28. In this case, the United States Trustee has filed a Motion for the Appointment of a Chapter 11 Trustee. (Doc. No. 34.) As that Motion and the Voluntary Petition sets forth, this Debtor and its management accumulated over $10 million of total liabilities in 18 months of operation owing $1.4 million to the Pennsylvania Department of Revenue for sales taxes, and substantial litigation against the Debtor for the non-payment of debt resulting in the loss of franchise licenses by Perkins.

29. By definition, a "chief restructuring officer" is an officer of the company that reports to the Board of Directors.

30. Complete and timely disclosure of all relevant and material information and documents lies at the heart of the bankruptcy process. This is particularly so in a Chapter 11 case, where the Creditors' Committee and the U.S. Trustee's office, each with fiduciary duties of their own, must have confidence and trust in the debtor and its professionals. *See, In re Mercury,* 280 B.R. 55–56 (Bankr.S.D.N.Y.2002) *aff'd and reinstated, Fellows & Hymowitz, P.C. v. Mercury (In re Mercury),* 122 Fed. Appx. 528 LEXIS 25481 (2d Cir.2004); *In re Saint Vincents Catholic Med. Centers of New York* 2007 WL 2492787, at *16 (Bankr. S.D.N.Y. Aug. 29, 2007).

31. The retention of a chief restructuring officer is not a novel issue. The Executive Office for United States Trustees adopted a set of core requirements of a Protocol (widely known as the Jay Alix Protocol) under which the United States Trustee will ordinarily not object to the appointment of a chief restructuring officer that includes the following:

> (a) the firm sought to be retained must serve in only one capacity (*i.e.*, as either a financial advisor, crisis manager, claims agent, or investor);
> (b) the firm's retention application must be filed under section 363 of the Bankruptcy Code and the application must disclose the firm's relationships with interested parties and make other disclosures showing the firm is otherwise disinterested;

  (c) the firm must file monthly staffing reports, which must be subject to Court review; and

  (d) retention of persons furnished by the firm must be approved by and act under the direction of an independent board of directors.

32. In this case, the debtor has not expressly sought retention under § 363 and cannot comply with the Jay Alix Protocol. Who would Compass report to? There are no known active independent Board members to oversee and make decisions about the operation of the Debtor.[1] Compass would have complete autonomy as an *officer* of the Debtor without any oversight by an independent Board of Directors.

33. As previously noted herein, Compass proposes to report to Mr. Kane, Debtor's counsel, and the Court. Debtor's counsel and the Court are obviously not appropriate parties to make ongoing strategic business decisions about the Debtor, the sale of its assets, and distribution of money obtained. What is the purpose of selection of Mr. Teitz and Compass as chief restructuring officer if not to change the decision-making authority away from Mr. Kane, who, the United States Trustee contends is not a proper fiduciary in this case as set forth in the Motion for Appointment of Chapter 11 Trustee.

34. "To be clear, the estate's fiduciaries will be held to the exacting standard required under applicable law. The Court reaches this conclusion because "[i]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession. Indeed, the willingness of courts to leave debtors in possession 'is premised upon an

---

[1] At the hearing on July 15, 2019, Counsel for the Debtor disclosed the ownership of the Debtor as 40% William Kane, 40% Tim Weaver, 14% Krissy Kochis, and 6% Dr. Ronald Linaburg. It was represented to undersigned counsel that Mr. Weaver resides in another state and has been inactive. Dr. Linaburg has resigned from all participation of the company in December 2018. It is unknown the status of Ms. Kochis at this time.

assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *BG Petroleum*, 525 B.R. at 282 (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)." *In re Circulatory Centers of Am.,* LLC, 579 B.R. 752, 760 (Bankr. W.D. Pa. 2017)

35. Where a company becomes insolvent, the fiduciary duty owed by corporate officers and directors shifts to the company's creditors. *See, e.g., Voest–Alpine Trading USA v. Vantage Steel Corp.,* 919 F.2d 206, 217 n. 25 (3d Cir.1990) (under Pennsylvania law, individuals "breached their fiduciary duty owing to [the corporation] and thus to [the corporation's] creditors when they participated in the fraudulent conveyance of [the corporation's] assets ... for less than full consideration" while the corporation was insolvent); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998, 1005 (3d Cir.1973) ("[a]s an officer, director, and principal stockholder of an insolvent corporation ... [the defendant] was duty bound to act 'with absolute fidelity to both creditors and stockholders' ") (quoting *Drury v. Cross,* 7 Wall. 299, 74 U.S. 299, 302, 19 L.Ed. 40 (1869)); *Sicardi v. Keystone Oil Co.,* 149 Pa. 148, 24 A. 163, 164 (1892); *see also Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 173 (3d Cir.2002) (under New Jersey law, "[o]nce a corporation becomes insolvent, however, the directors assume a fiduciary or 'quasi-trust' duty to the corporation's creditors.... In this quasi-trust relationship, 'officers and directors cannot prefer one creditor over another, and they have a special duty not to prefer themselves.' ") (quoting *In re Stevens,* 476 F.Supp. 147, 153 n. 5 (D.N.J.1979)). *In re Total Containment, Inc.,* 335 B.R. 589, 603 (Bankr. E.D. Pa. 2005)

36. "When a corporation is insolvent, the fiduciary duty of the controlling shareholders arises in favor of corporate creditors. *Travelers Casualty and Surety Co. v. Irex Corp.,* 2002 WL 32351176, at *3 (E.D.Pa.2002). Cases interpreting Pennsylvania law hold that a controlling

shareholder is a fiduciary of the corporation as are corporate officers; cases further hold that a fiduciary relationship develops between a controlling shareholder and creditors of the corporation, as it does between officers of the corporation and creditors of the corporation, at the point the corporation becomes insolvent. S*ee also Dexia Credit Local v. Rogan,* 2003 WL 22349111, at *7 (N.D.Ill.2003) (same for Illinois law). *Total Containment*, 335 B.R. at 604.

37. Mr. Teitz has been engaged in confidential discussions with 2 creditors of this estate that signifies that he has a conflict of interest that calls into question for the entire creditor body of this estate whether he can act as an independent fiduciary for the benefit of all creditors.

## CONCLUSION

38. The Bankruptcy Code vests the authority to direct the appointment of a chapter 11 trustee with the Court, and vests the United States Trustee with the authority to appoint such a chapter 11 trustee subject to Court approval. 11 U.S.C. § 1104.

39. Selection of an *independent* fiduciary is the role placed by Congress on the United States Trustee to vet the potential trustee for lack of disinterestedness and freedom from conflicts of interest.

40. The United States Trustee has sought the appointment of a Chapter 11 Trustee to fill the role of an independent fiduciary in this case.

41. The United States Trust asks this Honorable Court to deny the Application and enter an Order for the Appointment of a Chapter 11 Trustee.

## RESERVATION OF RIGHTS

42. The United States Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Application and grant such other relief as the Court deems appropriate and just.

Respectfully Submitted,

ANDREW R. VARA
ACTING UNITED STATES TRUSTEE

Dated: July 29, 2019        By:    /s/ Norma Hildenbrand
Norma Hildenbrand, Trial Attorney
PA ID 70421
Liberty Center, Suite 970
1001 Liberty Avenue
Pittsburgh, Pennsylvania 15222
(412) 644-4756 Telephone
(412) 644-4785 Facsimile
Norma.L.Hildenbrand@usdoj.gov