### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| 5171 CAMPBELLS, LAND CO., INC. | Bankruptcy No. 19-22715-CMB |
| Debtor, | Chapter 11 |
| 5171 CAMPBELLS LAND CO., INC., | Document No. |
| Movant, | |
| vs. | |
| ELMHURST PROPERTIES, INC., ASCENTIUM CAPITAL, LLC, IEMFS, Ltd. d/b/a GSG FINANCIAL, HITACHI CAPITAL AMERICA CORP., TRI STATE EQUIPMENT CO., INC., WESBANCO BANK, INC., STORE CAPITAL ACQUISITIIONS, LLC, STORE MASTER FUNDING XIII, LLC, US FOOD, INC., VISION FINANCIAL GROUP, INC., LED SOLUTIONS, PENNSYLVANIA DEPARTMENT OF REVENUE, THE NEW YORK DEPARTMENT OF TAXATION AND FINANCE, THE OHIO DEPARTMENT OF TAXATION and THE INTERNAL REVENUE SERVICE, | |
| Respondents. | |

### ORDER OF COURT (A) APPROVING SALE OF PERSONALTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF DEBTOR'S LAND LEASE WITH ELMHURST PROPERTIES, INC.

Upon consideration of the foregoing Emergency Motion of 5171 Campbells Land Co, Inc. (the "Debtor") for Sale of (1) Personalty; and (2) Debtor's Interest in that certain Land Lease with Elmhurst Properties, Inc. Free and Clear of all Liens, Claims and Encumbrances (the "Sale Motion") pursuant to

1

that certain Asset Purchase Agreement dated August ___, 2019 (the "Purchase Agreement")[1] by and between the Debtor and _____ (the "Buyer"), the Court HEREBY FINDS, DETERMINES, ORDERS, ADJUDGES AND DECREES THAT[2]:

1. Pursuant to 11 U.S.C. Section 363(b) and (f), the Debtor has effectuated service of the Sale Motion and the related Notice of Sale setting the hearing and response deadline upon the Respondents, all creditors and all other parties in interest as required by the applicable Bankruptcy Rules.

2. Cause exists for shortening any notice period required by Bankruptcy Rules 2002 and 6004 and the notice provided by the Debtor was reasonable in light of the circumstances.

3. Cause further exists to waive compliance with any advertising or publication requirements under the Bankruptcy code or the Bankruptcy Rules, including Local Bankruptcy Rule 6004-1, with the exception of the requirement to upload the Notice of Sale to the EASI system, which requirement the Debtor has complied with.

4. The Debtor has demonstrated compelling circumstances and a sufficient and sound business purpose and justification for the proposed sale to be approved on an emergency basis.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

[2] Findings of Fact shall be construed as conclusions of law, and conclusions of law should be construed as findings of fact when appropriate. *See* Fed. R. Bank. P. 7052. Any statements of this Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference in this Sale Order.

2

5.     The sale is in good faith in accordance with **In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir 1986)**.

6.     The Buyer is a purchaser in good faith, as that term is used in the Bankruptcy Code, and is entitled to the protection of section 363(m) of the Bankruptcy Code with respect to sale contemplated in the Purchase Agreement (the "Sale Transaction").  The Sale Transaction was negotiated and entered into in good faith, based upon arm's-length negotiations and without collusion or fraud of any kind.  The Purchase Price to be paid by the Buyer was not controlled by an agreement among potential bidders.  Neither the Buyer nor any of its affiliates, officers, directors, managers, shareholders, or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  The Sale Transaction may not be avoided, and no damages may be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable law.

7.     The Buyer would not consummate the transactions contemplated hereby, thus adversely affecting the Debtor, its estates, and its creditors, if either (i) the sale of the Purchased Assets and the assignment of the Assigned Contracts to the Buyer were not free and clear of all defenses, claims, obligations and Encumbrances of any kind or nature whatsoever to the greatest extent permitted under sections 105, 363 and 365 of the Bankruptcy Code and other applicable law, whether such defenses, claims, obligations and Encumbrances (collectively, the "<u>Interests</u>") are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, noticed or unnoticed, perfected or unperfected, allowed or disallowed, disputed or undisputed, whether accruing prior to or subsequent to the commencement of this Chapter 11 Case, whether imposed by agreement, understanding, law, equity or otherwise, relating to, accruing or arising at any time prior to the Closing, except the Assumed Liabilities.

8. A reasonable opportunity to object or be heard regarding the relief has been afforded to all interested persons and entities. Notice of the hearing on the Sale Motion (the "Sale Hearing") was good, sufficient, fair and adequate under the circumstances, was provided to all parties in interest entitled to receive notice and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

9. All objections to the Sale Motion or to the relief granted herein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

10. The matters considered by the Court at the hearing were "core" proceedings pursuant to 28 U.S.C. Section 157(b)(2) over which the Court has jurisdiction to enter a final Order.

11. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full.

12. The terms of the sale contained in the Purchase Agreement are fair and reasonable and in the best interests of this Estate. Accordingly, the Sale

Motion is **GRANTED** and the sale of the Purchased Assets and the assumption and assignment of the Assigned Contracts to the Buyer, pursuant to the terms of the Purchase Agreement, is **APPROVED** in all respects pursuant to sections 105, 363 and 365 of the Bankruptcy Code. The Debtor and the Buyer and their affiliates, officers, directors, employees and agents are hereby authorized and directed to take such actions as are necessary to consummate and implement the Sale Transaction as contemplated in the Purchase Agreement and this Sale Order.

13. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is hereby authorized to fully assume, perform under, consummate and implement the Purchase Agreement, together with such additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may reasonably be requested by Buyer for the purpose of assigning, transferring, granting conveying and conferring the Purchased Assets to Buyer, or as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement and this Sale Order.

14. The Purchased Assets shall be transferred to Buyer and upon the Closing (one or both of them) shall be free and clear of all Interests of any kind or nature whatsoever, whether such Interests are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, noticed or unnoticed, perfected or unperfected, allowed or disallowed, disputed

or undisputed, whether accruing prior to or subsequent to the commencement of the Case, whether imposed by agreement, understanding, law, equity or otherwise, relating to, accruing or arising at any time prior to the Closing, and all such Interests of any kind or nature whatsoever, shall attach to the net cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect that they now have as against the Purchased Assets. Upon the Closing, the Buyer shall be vested with the Purchased Assets free and clear of all Interests.

15. Without limiting the foregoing, the Buyer is not a successor to, or vicarious or otherwise liable for, the liabilities, claims, debts or obligations of the Debtor under any theory of law or for any purpose, and all creditors of the Debtor and all parties are enjoined from taking action against the Buyer or the Purchased Assets, other than with respect to the Assumed Liabilities.  Without in any way limiting the foregoing, the Buyer shall not, and shall not be deemed to: (i) be the successor of or successor employer under (a)  the Worker Adjustment and Retraining Notification, as amended (WARN) Act, (b) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including by the requirements of Part 6 of Title I of Employee Retirement Income Security Act and Section 4980B of the Internal Revenue Code (COBRA), and applicable regulations thereunder, (c) any similar state or local law or (d) any collective bargaining agreement or other labor or employment agreement or pension or employee benefits plan (including any common law successorship liability in relation to any pension plans or any multiemployer plans to which the Debtor has

6

at any time contributed to or had any liability or potential liability, including with respect to unfunded, underfunded and/or withdrawal liability); (ii) be the successor of or successor employer to the Debtor, and shall instead be, and deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (iii) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; (iv) be a mere continuation or substantial continuation of the Debtor or the enterprise(s) of the Debtor; or (v) be liable for any acts or omissions of the Debtor in the conduct of the Purchased Restaurants or arising under or related to the Purchased Assets other than as set forth in the Purchase Agreement.

16. Except with respect to the Assumed Liabilities, all persons or entities holding Interests of any kind or nature with respect to the Purchased Assets are hereby barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against the Buyer, its successors or assigns, or the Purchased Assets. This Sale Order is and shall be effective as a determination that all such Interests shall be and are, without further action by any person or entity, released with respect to the Purchased Assets and the Buyer as of the Closing.

17. The Debtor has good and marketable title in and to the Purchased Assets and, subject only to the entry of this Sale Order and receipt of the approvals and consents required by the Purchase Agreement, has the full power and authority to execute all documents contemplated thereby, and the sale of the

Purchased Assets by the Debtors has been duly and validly authorized by all necessary action of the Debtor. No consents or approvals other than those provided for in the Purchase Agreement or this Sale Order are required for the Debtor to consummate the transactions described in this Sale Order.

18. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtor's assumption and assignment to the Buyer of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. The Buyer may add or eliminate any contract from the list of Assigned Contracts in accordance with Section 2.2 of the Purchase Agreement.

19. The Debtor is hereby authorized and directed, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyer, effective upon the Closing, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the Buyer such agreements, documents or other instruments as may be necessary to sell, assign, transfer, convey and deliver the Assigned Contracts to the Buyer. To the extent any Assigned Contract is not an executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, the Debtor is authorized to transfer all of its rights and future obligations under such Assigned Contract as a Purchased Assets to the Buyer free and clear of liabilities, claims or Interests arising prior to the closing, pursuant to section 363 of the Bankruptcy Code.

20. The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code.

21. All defaults or other obligations of the Debtor under any Assigned Contract (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment at the Closing by the Debtor, or as soon thereafter as practicable, of any Cure Amount with respect to each Assigned Contract, and all objections filed by non-debtor parties to the Assigned Contracts having been resolved or overruled, or such contracts having been removed from the list of Assigned Contracts.

22. Each non-debtor party to an Assigned Contract hereby is forever barred, estopped and permanently enjoined from asserting (i) against the Debtor or the Buyer, any default, whether declared or undeclared, or known or unknown, arising under the Assigned Contract prior to the Closing Date, and (ii) against the Buyer, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor as the counter-parties to any Assigned Contract.

23. Any provision in an Assigned Contract that purports to prohibit or condition the assignment of such Assigned Contract or allow the non-debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon

the assignment of such Assigned Contract, is hereby deemed to be an unenforceable anti-assignment provision and shall be void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assigned Contracts have been satisfied and, except as set forth in this Sale Order or in any other order issued by this Court, all counterparties to such Assigned Contracts shall be deemed to have consented to the assignment to Buyer as contemplated by section 365(c) of the Bankruptcy Code. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title, privilege and interest of the Debtor in and to the Assigned Contracts.

24. Upon the Closing, the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts.

25. Payment of the Cure Amount (if any) shall, with respect to each Assigned Contract, (a) effect a cure of all defaults, (b) compensate the non-debtor party to such Assigned Contract for any actual pecuniary loss resulting from such defaults, and (c) together with the assumption of the Assigned Contracts by the Debtor and its assignment to the Buyer, constitute adequate assurance of future performance thereof.

26. The Buyer has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

27. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Buyer or the Purchased Assets any assignment fee, default, breach, claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

28. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no reason for delay in the implementation of this Sale Order. This Sale Order shall be effective immediately upon its entry and the parties may consummate the transaction pursuant to the terms and conditions set forth herein and in the Purchase Agreement.

29. The terms and provisions of the Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon the Debtor, its estate, creditors and officers, and Buyer and its affiliates, successors and assigns, including any trustee that may be appointed in this Case (including if this Case is converted to chapter 7 of the Bankruptcy Code) and any affected third parties, including, but not limited to, entities asserting claims against, or Interests in, the Debtor's estate or the Purchased Assets.

30. Nothing contained in any chapter 11 plan confirmed in this Case, or in any related confirmation order, disclosure statement, or order approving disclosure statement shall conflict with or derogate from the provisions of this

Sale Order, this Sale Order and the transactions being in contemplation of, in furtherance of and in connection with such chapter 11 plan.

31. Closing of the sale must close in accordance with the terms of the Purchase Agreement with the proceeds of the sale to be distributed to Robert O Lampl as escrow agent to be held in escrow pending further Order of Court, except that Robert O Lampl as escrow agent shall be able to disburse funds for the following without further Order of Court:

(a) Post-Petition Payroll;

(b) Post-Petition Payroll Taxes;

(c) Post-Petition Sales Taxes;

(d) U.S. Trustee Fees;

(e) $100,000 to Compass Advisory Partners, LLC to be held in escrow pending an approved fee application;

(f) $100,000 to Robert O Lampl to be held in escrow pending an approved fee application.

Date:_____

_____
Carlota M. Böhm
Chief United States Bankruptcy Court Judge