# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 19-22715-CMB |
| 5171 Campbells Land Co., Inc., | |
| Debtor. | Chapter 11 |

**EXPEDITED JOINT MOTION OF DEBTOR, STORE CAPITAL ACQUISITIONS, LLC, AND STORE MASTER FUNDING XIII, LLLC. FOR AN ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 363, BANKRUPTCY RULE 9019
AUTHORIZING SETTLEMENT**

5171 Campbells Land Co., Inc. ("**Debtor**"), STORE Capital Acquisitions, LLC ("**STORE Capital**") and STORE Master Funding XIII, LLC ("**STORE Master**" and together with STORE Capital, "**STORE**"), by and through undersigned counsel, jointly move (the "**Motion**") the United States Bankruptcy Court for the Western District of Pennsylvania (the "**Court**") for entry of an order (the "**Order**"), pursuant to sections 105(a) and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), on the terms set forth on **Exhibit 1** hereto. In support of this Motion, Debtor and STORE (together, the "**Parties**") respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157, 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1448 and 1409.

## PROCEDURAL BACKGROUND

2. On July 8, 2019 (the "**Petition Date**"), Debtor commenced its bankruptcy case by filing a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code in this Court.

3. STORE Master is the owner of nonresidential real property in which the Debtors lease property (the "**Premises**") pursuant to that certain Master Lease agreement dated February 12, 2018 (the "**Master Lease**") and those certain individual lease agreements dated February 12, 2018 (the "**Individual Leases**" and, together with the Master Lease, the "**Leases**").

4. In connection with the Master Lease, STORE Master holds a security deposit in the sum of $2,500,000.00 (the "**Security Deposit**") as security for the full and faithful performance by Debtor under the Leases.

5. Further, in connection with the Leases, Debtor granted STORE a security interest in all furniture, fixtures, and equipment (the "**FF&E**") located in the Premises,[1] which security interest STORE perfected by filing UCC-1 financing statements with the Secretary of State for the State of Pennsylvania (the "**STORE UCCs**").

---

[1] Debtor did not grant STORE a security interest over the FF&E located at 3870 Elm Road NE, Warren, OH 44483

6. Debtor is indebted to STORE under both the Leases and that certain promissory note (the "**Promissory Note**") in the amount of $1,750,000.00 dated April 3, 2018.

7. Prior to the Petition Date, STORE filed a complaint (the "**Complaint**") against Debtor in the United States District Court for the Western District of Pennsylvania initiating Case No. 19-cv-00685-PJP (the "**Pennsylvania Action**"). In the Complaint, STORE asserted claims for breach of contract under the Promissory Note and the Leases.

8. On or about July 2, 2019, STORE filed its Motion for Expedited Appointment of Receiver (the "**Receiver Motion**") in the Pennsylvania Action.

9. The Pennsylvania Action is currently stayed as a result of the filing of this case.

10. On August 14, 2019, the United States Trustee appointed the Unsecured Creditors Committee to represent the interests of all general unsecured creditors in this case pursuant to section 1102 of the Bankruptcy Code.

11. Since the Petition Date, Debtor entered into negotiations with JDK Management Co., Inc. ("**JDK**") regarding the purchase of certain Debtor assets located at the following Premises:

- 2728 West State Street, Olean, New York 14760;
- 4334 Buffalo Road, Erie, Pennsylvania 16510;
- 7175 Engle Road, Middleburg Heights, Ohio 44130;
- 4403 Peach Street, Erie, Pennsylvania 16509;

- 804 Boardman-Poland Road, Youngstown, Ohio 44512;

- 18276 Conneaut Lake Road, Meadville, Pennsylvania 16335;

- 1953 Niles-Cortland Road SE, Warren, Ohio 44484;

- 1871 Oakland Avenue, Indiana, Pennsylvania 15701;

- 78 Perkins Road, Clarion, Pennsylvania 16214;

- 5550 Interstate Blvd., Austintown, Ohio 44515;

- 207 W. Plum Street, Edinboro, Pennsylvania 16412; and

- 3870 Elm Road NE, Warren, OH 44483 (the "**12 JDK Stores**").

12. JDK has offered to purchase certain assets at the 12 JDK Stores (the "**JDK Sale**"), including assets over which STORE holds a first position lien (with the exception of the assets located at 3870 Elm Road NE, Warren, OH 44483) pursuant to the STORE UCCs.

13. Further, after filing its bankruptcy petition, Debtor entered into negotiations with Rebecca Rogers ("**Rogers**") regarding the purchase of certain assets of Debtor's located at 1601 W. Prospect Road, Ashtabula, Ohio 44004 (the "**Rogers Store**").

14. Rogers has offered to purchase certain assets at the Rogers Store (the "**Rogers Sale**"), including assets over which STORE holds a first position lien pursuant to the STORE UCCs.

Case 19-22715-CMB    Doc 198    Filed 08/28/19    Entered 08/28/19 17:59:48    Desc Main

15. Further, after filing its bankruptcy petition, Debtor entered into negotiations with Amanda Bittinger ("**Bittinger**") regarding the purchase of certain assets of Debtor located at 658 US Route 250 E, Ashland, Ohio, 44805 (the "**Bittinger Store**").

16. Bittinger has offered to purchase certain assets at the Bittinger Store (the "**Bittinger Sale**") including assets over which STORE holds a first position lien pursuant to the STORE UCCs.

## THE SETTLEMENT AGREEMENT

17. Subject to approval of this Motion, and subject to the timing and other provisions set forth in the Settlement Agreement, in an effort to effectuate the JDK Sale, the Rogers Sale, and the Bittinger Sale, and in an effort to reach a full and final settlement relating to the disputes among them related to the Pennsylvania Action, the Receiver Motion, and STORE's treatment by Debtor and its claims as a creditor in the Bankruptcy case, the Parties have agreed to settle their disputes pursuant to the terms of this Motion and the Settlement Agreement.

18. As of the Effective Date[2] of the Settlement Agreement, and in order to effectuate certain sales, STORE shall release the security interest it holds over the FF&E identified in the JDK Sale, the Rogers Sale, and the Bittinger Sale (the "**STORE Release**"). Any remaining FF&E that is not sold as part of the JDK Sale, the Rogers Sale, or the Bittinger Sale shall be abandoned in place to STORE, which abandonment shall be effective on September 17, 2019 (the "**Remaining FF&E**"). STORE further

---

[2] Unless otherwise defined, capitalized terms are used as defined in the Settlement Agreement.

agrees to release any interest it may acquire in the proceeds resulting from the JDK Sale, the Rogers Sale, or the Bittinger Sale.

19. Debtor shall reject the Leases for the 12 JDK Stores effective as of the closing date of the JDK Sale, the Lease for the Rogers Store effective as of the closing date of the Rogers Sale, and the Lease for the Bittinger Store effective as of the closing date of the Bittinger Sale.

20. STORE shall return $250,000.00 of the Security Deposit to Debtor's bankruptcy estate.

21. In exchange for the STORE Release and the return of $250,000.00 of the Security Deposit, the Security Deposit in the remaining amount of $2,250,000.00 shall be released to STORE as of the Effective Date (the "**Deposit Turnover**"). Debtor, on behalf of itself, its members, the Guarantors, and its bankruptcy estate disclaims any further interest in the Security Deposit as of the Effective Date. STORE agrees to recoup any administrative expense claim STORE may hold against Debtor from the Deposit Turnover, and/or other non-estate funds.

22. In exchange for the STORE Release and the return of $250,000.00 of the Security Deposit, Debtor its agents, professionals, or assignees, agree to release any and all claims against STORE, including without limitation, any preference or avoidance claims that Debtor may hold with regard to STORE, as more specifically defined in the Settlement Agreement.

23. Conversely, except as it relates to the Remaining FF&E and any rejection damage claims it holds, STORE releases, waives and discharges any and all

claims it holds or may hold against the Debtor arising from or relating to the facts or circumstances referenced, discussed, or addressed in, or related to, (i) the Properties, (ii) the Leases, or (iii) any aspect of the Debtors' bankruptcy cases relating to the Leases or Properties, as more specifically defined in the Settlement Agreement.

24. Balancing the benefits and costs of litigating any claims the Debtor may have against STORE against the advantages of receipt of $250,000.00 from the Security Deposit and the STORE Release, Debtor has determined that the Settlement Agreement is a reasonable resolution of its disputes with STORE and in the best interests of the creditors, their estates, and all parties in interest.

25. The Settlement Agreement is the result of good faith negotiations, with all parties being represented by counsel. Under the circumstances, Debtor believes that the Settlement Agreement represents a fair and appropriate settlement of its disputes with STORE and is necessary to effectuate the JDK Sale, the Rogers Sale, and the Bittinger Sale.

**RELIEF REQUESTED**

26. By this Motion, the Parties jointly seek approval of the Settlement Agreement pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. The Debtor has weighed the costs, delay and risks to its reorganization that would arise from continued dispute with STORE, the difficulty of effectuating the JDK Sale, the Rogers Sale and the Bittinger Sale without the STORE Release, and the liquidity provided by the return of a portion of the Security Deposit against the compromises contained within the Settlement Agreement. In light of these

considerations, the Parties, and most importantly the Debtor, believes that the Settlement Agreement is in the best interest of the creditors in this case.

## BASIS FOR RELIEF REQUESTED

27. Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Pursuant to Bankruptcy Rule 9019, bankruptcy courts should approve a compromise or settlement if it is in the best interests of the debtor's estate. Specifically, Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED R. BANKR. P. 9019.

28. In determining if a compromise or settlement should be approved under Bankruptcy Rule 9019(a), the Third Circuit has held that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th Ed. 1993)). The Third Circuit has adopted a balancing test, under which a bankruptcy court should consider four factors to determine whether to approve a particular compromise or settlement:

> This particular process of bankruptcy court approval [of a settlement under Bankruptcy Rule 9019] requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. Taking our cue from *Protective*

> *Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 1163-64, 20 L. Ed. 2d 1, 9-10 (1968), we recognize four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*In re Martin*, 91 F.3d at 393.

29. No one factor is dispositive. Instead, the Court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* In addition, in exercising its discretion, the Court must make an independent determination that the settlement is fair and equitable to "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *See In re Exide Techs.*, 303 B.R. 48, 67 (Bankr. D. Del. 2003). Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *See In re Nutraquest, Inc.*, 434 F.3d at 639; *Law Debenture Trust Co. v. KaiserAluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91 (D. Del. 2006). In addition, section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

30. Based on the facts and circumstances in this case, the *Martin* factors weigh in support of approval of the Settlement between the Parties. Following a significant amount of settlement discussions with STORE, Debtor determined that the prosecution of its claims against STORE, and defense against STORE's rejection

damages claim would be time consuming, and would put the success of the JDK Sale, the Rogers Sale, and the Bittinger Sale at significant risk. Debtor has thus determined that the Settlement Agreement is in the best interests of the Debtor, its estate, and creditors. The inherent risks of litigation create uncertainty, and there is no guarantee of success. Without a settlement, the disputes between the Parties could continue for months, or longer, and would likely require Debtor to delay any sale of its assets over which STORE holds a security interest, which in turn would spell disaster for Debtor's ability to effectuate quick and orderly sales thus reducing the likelihood of payment to any of Debtor's creditors. In addition, by entering the Settlement Agreement, Debtor gains certainty that its estate will not incur additional claims, and that the JDK Sale, the Rogers Sale, and the Bittinger Sale can close within coming weeks.

31.  The Settlement is also the product of arm's-length negotiations, proposed in good faith and without collusion. The Parties have considered the alternatives to settlement, including, but not limited to, the risks described above. After considering those factors, Debtor determined, in its business judgment, that the terms of the Settlement Agreement are both fair and in the best interests of it estate. Accordingly, Debtor respectfully submits that the Settlement Agreement satisfies the standards for approval pursuant to Bankruptcy Rule 9019. Approval of the Settlement is also proper pursuant to Section 105(a) of the Bankruptcy Code.

## NOTICE

32. The Parties have provided notice of this Motion to: (a) the Office of the U.S. Trustee for the Western District of Pennsylvania; and (b) the creditors listed in the schedules. In light of the relief requested, no other or further notice is required.

## NO PRIOR REQUEST

33. No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the proposed Order, in substantially the form attached hereto, approving and authorizing the Settlement Agreement and granting such other and further relief as the Court deems appropriate.

Dated: August 28, 2019

| | |
|---|---|
| /s/ Ryan J. Cooney (with permission) | /s/ Michael A. DiGiacomo |
| Robert O. Lampl | Craig Solomon Ganz (admitted pro hac vice) |
| Ryan J. Cooney | |
| **ROBERT O. LAMPL LAW OFFICE** | Michael A. DiGiacomo (admitted pro hac vice) |
| 223 Fourth Avenue, 4th Floor | |
| Pittsburgh, PA 15222 | **BALLARD SPAHR LLP** |
| Tel: 412.392.0330 | 1 E. Washington St., 23rd Floor |
| Fax: 412.392.0335 | Phoenix, AZ 85004 |
| | Tel: 602.798.5400 |
| *Counsel for Debtor* | Fax: 602.798.5595 |
| | |
| | *Counsel for STORE Master Funding XIII, LLC and STORE Capital Acquisitions, LLC* |