IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| 5171 CAMPBELLS LAND CO., INC., | Bankruptcy No. 19-22715-CMB |
| Debtor, | Chapter 11 |
| 5171 CAMPBELLS LAND CO., INC., | Document No. |
| Movant, | Related to Doc. No. 158 |
| vs. | |
| ELMHURST PROPERTIES, INC., ASCENTIUM CAPITAL, LLC, IEMFS, Ltd. d/b/a GSG FINANCIAL, HITACHI CAPITAL AMERICA CORP., TRI STATE EQUIPMENT CO., INC., WESBANCO BANK, INC., STORE CAPITAL ACQUISITIIONS, LLC, STORE MASTER FUNDING XIII, LLC, US FOODS, INC., VISION FINANCIAL GROUP, INC., LED SOLUTIONS, PENNSYLVANIA DEPARTMENT OF REVENUE, THE NEW YORK DEPARTMENT OF TAXATION AND FINANCE, THE OHIO DEPARTMENT OF TAXATION and THE INTERNAL REVENUE SERVICE, | |
| Respondents. | |

### ORDER OF COURT (A) APPROVING SALE OF PERSONALTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF DEBTOR'S LAND LEASE WITH ELMHURST PROPERTIES, INC.

Upon consideration of the foregoing Emergency Motion of 5171 Campbells Land Co, Inc. (the "Debtor") for Sale of (1) Personalty; and (2) Debtor's Interest in that certain Land Lease with Elmhurst Properties, Inc. Free and Clear of all Liens, Claims and Encumbrances (the "Sale Motion") pursuant to

{C1071392.1}

that certain Amended and Restated Asset Purchase Agreement dated September 4, 2019, a copy of which is attached hereto as **Exhibit A** (the "Purchase Agreement")[1] by and between the Debtor and Phoenix Management Systems, LLC, a Pennsylvania limited liability company (the "Buyer"), the Court HEREBY FINDS, DETERMINES, ORDERS, ADJUDGES AND DECREES THAT[2]:

1. Pursuant to 11 U.S.C. Section 363(b) and (f), the Debtor has effectuated service of the Sale Motion and the related Notice of Sale setting the hearing and response deadline upon the Respondents, all creditors and all other parties in interest as required by the applicable Bankruptcy Rules.

2. Cause exists for shortening any notice period required by Bankruptcy Rules 2002 and 6004 and the notice provided by the Debtor was reasonable in light of the circumstances.

3. Cause further exists to waive compliance with any advertising or publication requirements under the Bankruptcy code or the Bankruptcy Rules, including Local Bankruptcy Rule 6004-1, with the exception of the requirement to upload the Notice of Sale to the EASI system, which requirement the Debtor has complied with.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.
[2] Findings of Fact shall be construed as conclusions of law, and conclusions of law should be construed as findings of fact when appropriate. See Fed. R. Bank. P. 7052. Any statements of this Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference in this Sale Order.

4. The Debtor has demonstrated compelling circumstances and a sufficient and sound business purpose and justification for the proposed sale to be approved on an emergency basis.

5. The sale is in good faith in accordance with **In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir 1986)**.

6. The Buyer is a purchaser in good faith, as that term is used in the Bankruptcy Code, and is entitled to the protection of section 363(m) of the Bankruptcy Code with respect to sale contemplated in the Purchase Agreement (the "Sale Transaction"). The Sale Transaction was negotiated and entered into in good faith, based upon arm's-length negotiations and without collusion or fraud of any kind. The Purchase Price to be paid by the Buyer was not controlled by an agreement among potential bidders. Neither the Buyer nor any of its affiliates, officers, directors, managers, shareholders, or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. The Sale Transaction may not be avoided, and no damages may be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable law.

7. The Buyer would not consummate the transactions contemplated hereby, thus adversely affecting the Debtor, its estates, and its creditors, if the sale of the Purchased Assets and the assignment of the Assigned Contracts to the Buyer were not free and clear of all defenses, claims (including any adverse claims of ownership), obligations and Encumbrances of any kind or nature whatsoever to the greatest extent permitted under sections 105, 363 and 365 of

the Bankruptcy Code and other applicable law, whether such defenses, claims, obligations and Encumbrances (collectively, the "Interests") are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, noticed or unnoticed, perfected or unperfected, allowed or disallowed, disputed or undisputed, whether accruing prior to or subsequent to the commencement of this Bankruptcy Case, whether imposed by agreement, understanding, law, equity or otherwise, relating to, accruing or arising at any time prior to the Closing, except the Assumed Liabilities.

8. A reasonable opportunity to object or be heard regarding the relief has been afforded to all interested persons and entities. Notice of the hearing on the Sale Motion (the "Sale Hearing") was good, sufficient, fair and adequate under the circumstances, was provided to all parties in interest entitled to receive notice and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

9. All objections to the Sale Motion or to the relief granted herein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

10. The matters considered by the Court at the hearing were "core" proceedings pursuant to 28 U.S.C. Section 157(b)(2) over which the Court has jurisdiction to enter a final Order.

11. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full.

12. The terms of the sale contained in the Purchase Agreement are fair and reasonable and in the best interests of this Estate. Accordingly, the Sale Motion is **GRANTED** and the sale of the Purchased Assets and the assumption and assignment of the Assigned Contracts to the Buyer, pursuant to the terms of the Purchase Agreement, is **APPROVED** in all respects pursuant to sections 105, 363 and 365 of the Bankruptcy Code, including Section 363(b). The Debtor and the Buyer and their respective affiliates, officers, directors, employees and agents (including William T. Kane as the President of the Debtor) are hereby authorized and directed to take such actions as are necessary to consummate and implement the Sale Transaction as contemplated in the Purchase Agreement and this Sale Order. William T. Kane in his capacity as the President of the Debtor, has the power and authority to execute the Purchase Agreement and closing documents ancillary thereto and otherwise consummate and implement the Sale Transaction and irrevocably and forever bind the Debtor thereto.

13. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is hereby authorized to fully assume, perform under, consummate and implement the Purchase Agreement, together with such additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may reasonably be requested by Buyer for the purpose of assigning, transferring, granting conveying

and conferring the Purchased Assets to Buyer, or as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement and this Sale Order. To the extent that the terms of the Purchase Agreement and this Order conflict, this Order shall control.

14.     The Purchased Assets shall be transferred to Buyer and upon the Closing (one or both of them) shall be free and clear of all Interests of any kind or nature whatsoever, whether such Interests are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, noticed or unnoticed, perfected or unperfected, allowed or disallowed, disputed or undisputed, whether accruing prior to or subsequent to the commencement of this Bankruptcy Case, whether imposed by agreement, understanding, law, equity or otherwise, relating to, accruing or arising at any time prior to the Closing, and all such Interests of any kind or nature whatsoever, shall attach to the net cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect that they now have as against the Purchased Assets. Upon the Closing, the Buyer shall be fully and irrevocably vested with the Purchased Assets free and clear of all Interests.

15.     Without limiting the foregoing, the Buyer is not a successor to, or vicarious or otherwise liable for, the liabilities, claims, debts or obligations of the Debtor under any theory of law or for any purpose, and all creditors of the Debtor and all parties are enjoined from taking action against the Buyer or the Purchased Assets, other than with respect to the Assumed Liabilities. Without in

any way limiting the foregoing, the Buyer shall not, and shall not be deemed to: (i) be the successor of or successor employer under (a) the Worker Adjustment and Retraining Notification, as amended (WARN) Act, (b) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including by the requirements of Part 6 of Title I of Employee Retirement Income Security Act and Section 4980B of the Internal Revenue Code (COBRA), and applicable regulations thereunder, (c) any similar state or local law or (d) any collective bargaining agreement or other labor or employment agreement or pension or employee benefits plan (including any common law successorship liability in relation to any pension plans or any multiemployer plans to which the Debtor has at any time contributed to or had any liability or potential liability, including with respect to unfunded, underfunded and/or withdrawal liability); (ii) be the successor of or successor employer to the Debtor, and shall instead be, and deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (iii) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; (iv) be a mere continuation or substantial continuation of the Debtor or the enterprise(s) of the Debtor; or (v) be liable for any acts or omissions of the Debtor in the conduct of the Purchased Restaurants or arising under or related to the Purchased Assets other than as set forth in the Purchase Agreement.

16.   As a condition of approval of this sale, Buyer shall reasonably cooperate with the Official Committee of Unsecured Creditors (the "**Committee**")

and any future Plan Administrator or Trustee in providing reasonable access to the Purchased Restaurants for inspection at times that will not unreasonably interfere with Buyer's business operations. While such access will be subject to reasonableness and, where appropriate, subpoena and normal Court procedures and Rules, the Buyer shall nevertheless cooperate in such access and not act to prevent such reasonable inspection. In the event the Committee, Plan Administrator or Trustee seeks to subpoena any of the Debtor's former employees who become a Transferred Employee, Buyer will not unreasonably interfere with the Committee's, Plan Administrator's or Trustee's subpoena efforts. Buyer shall (at no cost to Buyer) provide the Debtor, Committee or any future Plan Administrator or Trustee reasonable access to business records of the Debtor (including daily receipts, sales report, etc.) acquired by Buyer as part of the Sale Transaction and in Buyer's possession or control, provided Buyer shall not be obligated to maintain any such business records of the Debtor for more than one (1) year from the Closing Date (after which Buyer may destroy such business records).

17. Except with respect to the Assumed Liabilities, all persons or entities holding Interests of any kind or nature with respect to the Purchased Assets are hereby barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against the Buyer, its successors or assigns, or the Purchased Assets. This Sale Order is and shall be effective as a determination that all such Interests shall be and are, without further action by any person or entity, released with respect to the Purchased

Assets and the Buyer as of the Closing. Following the Closing, no holder of any Interest shall interfere with Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Interest, or based on any action the Debtor may take in this Bankruptcy Case.

18. The Debtor is the sole and lawful owner of the Purchased Assets holding good and marketable title in and to the Purchased Assets. Subject only to the entry of this Sale Order and receipt of the approvals and consents required by the Purchase Agreement, the Debtor has the full power and authority to execute all documents contemplated thereby, and the sale of the Purchased Assets by the Debtor has been duly and validly authorized by all necessary action of the Debtor. No consents or approvals other than those provided for in the Purchase Agreement or this Sale Order are required for the Debtor to consummate the transactions described in this Sale Order.

19. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtor's assumption and assignment to the Buyer of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. The Buyer may add or eliminate any contract from the list of Assigned Contracts in accordance with Section 2.2 of the Purchase Agreement.

20. The Debtor is hereby authorized and directed, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyer, effective upon the Closing, the Assigned Contracts free and clear of

all Interests of any kind or nature whatsoever, and (b) execute and deliver to the Buyer such agreements, documents or other instruments as may be necessary to sell, assign, transfer, convey and deliver the Assigned Contracts to the Buyer. To the extent any Assigned Contract is not an executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, the Debtor is authorized to transfer all of its rights and future obligations under such Assigned Contract as a Purchased Assets to the Buyer free and clear of liabilities, claims or Interests arising prior to the closing, pursuant to section 363 of the Bankruptcy Code.

21. The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code.

22. All defaults or other obligations of the Debtor under any Assigned Contract (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment at the Closing by the Debtor, or as soon thereafter as practicable, of any Cure Amount with respect to each Assigned Contract, and all objections filed by non-debtor parties to the Assigned Contracts having been resolved or overruled, or such contracts having been removed from the list of Assigned Contracts.

23. Each non-debtor party to an Assigned Contract hereby is forever barred, estopped and permanently enjoined from asserting (i) against the Debtor

or the Buyer, any default, whether declared or undeclared, or known or unknown, arising under the Assigned Contract prior to the Closing Date, and (ii) against the Buyer, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor as the counter-parties to any Assigned Contract.

24. Any provision in an Assigned Contract that purports to prohibit or condition the assignment of such Assigned Contract or allow the non-debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Assigned Contract, is hereby deemed to be an unenforceable anti-assignment provision and shall be void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assigned Contracts have been satisfied and, except as set forth in this Sale Order or in any other order issued by this Court, all counterparties to such Assigned Contracts shall be deemed to have consented to the assignment to Buyer as contemplated by section 365(c) of the Bankruptcy Code. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title, privilege and interest of the Debtor in and to the Assigned Contracts.

25. Upon the Closing, the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts.

26. Payment of the Cure Amount (if any) shall, with respect to each Assigned Contract, (a) effect a cure of all defaults, (b) compensate the non-

{C1071392 1}                                    11

debtor party to such Assigned Contract for any actual pecuniary loss resulting from such defaults, and (c) together with the assumption of the Assigned Contracts by the Debtor and its assignment to the Buyer, constitute adequate assurance of future performance thereof.

27. The Buyer has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

28. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Buyer or the Purchased Assets any assignment fee, default, breach, claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

29. Upon Closing, all leases that the Debtor has with Vision Financial Group, Inc. related to the Purchased Assets shall be deemed rejected.

30. Notwithstanding anything to the contrary elsewhere in this Order or Purchase Agreement, Reinhart Foodservice, L.L.C. ("Reinhart") owns the dish machines, water softeners and related equipment, (collectively, the "Reinhart Property") provided to the Debtor pursuant to the March 18, 2018 Equipment Lease Agreement and related documents (collectively the "Reinhart Lease Agreement") and the Reinhart Property shall not be included within the definition of the Purchased Assets or any sub-category thereof sold to the Buyer. Possession of the Reinhart Property at each location shall not be transferred to

the Buyer except upon the assumption and assignment of the applicable Lease Agreement, or as otherwise agreed between Buyer and Reinhart in writing.

31. In the event that the applicable Reinhart Lease Agreement is not assumed and assigned to the Buyer, the applicable Reinhart Property shall be promptly returned to Reinhart, unless Reinhart agrees otherwise in writing.

32. In the event that the Reinhart Lease Agreement is assumed and assigned to the Buyer, the pre-petition and post-petition cure amount shall be determined based upon future agreement of the parties or order of the court.

33. Moreover, notwithstanding anything to the contrary elsewhere in this Order or in the Purchase Agreement, pending assumption or rejection of the applicable Reinhart Lease Agreement, Debtor shall remain liable for all post-petition charges for use of the Reinhart Property from the Petition Date through the date of Closing of the sale as an administrative expense.

34. Reinhart shall be entitled to cash-in-advance payment for food and other products to be delivered to the Debtor between the date hereof and the Closing of the sale. Upon Closing of the sale, Reinhart's open post-petition invoice in the amount of approximately $2,500 shall be paid in accordance with paragraph 40 herein.

35. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no reason for delay in the implementation of this Sale Order. This Sale Order shall be effective immediately

upon its entry and the parties may consummate the transaction pursuant to the terms and conditions set forth herein and in the Purchase Agreement.

36. The terms and provisions of the Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon the Debtor, its estate, creditors and officers, and Buyer and its affiliates, successors and assigns, including any trustee or Plan Administrator that may be appointed in this Bankruptcy Case (including if this Bankruptcy Case is converted to chapter 7 of the Bankruptcy Code) and any affected third parties, including, but not limited to, entities asserting claims against, or Interests in, the Debtor's estate or the Purchased Assets.

37. The Debtor and the Committee have agreed that a Liquidating Plan shall be filed and supported for confirmation, which Plan isolates any extant Avoidance Actions (rights under Chapter 5 of the Bankruptcy Code) and other causes of action of the Estate to be administered for the benefit of creditors by a Plan Administrator selected by the Committee. In order to provide certainty with respect to the Plan process, the Debtor and the Committee have agreed that the Debtor shall file such Liquidating Plan within 21 days, that the Debtor's exclusive right to file a Plan shall terminate as to the Committee upon the entry of this Order, and that the Debtor shall not be entitled to convert to Chapter 7 after the entry of this Order, without the consent of the Committee. Nothing contained in any chapter 11 plan confirmed in this Bankruptcy Case, or in any related confirmation order, disclosure statement, or order approving disclosure statement shall conflict with or derogate from the provisions of this Sale Order, and the

transactions being in contemplation of, in furtherance of and in connection with such chapter 11 plan. Failure of the Debtor to comply with its obligation to file a Liquidating Plan shall not, in any way, affect: (i) the Debtor's obligation to close the Sale Transaction pursuant to the Purchase Agreement (and Buyer's right to compel the Debtor to close), or (ii) the final and irrevocable transfer of the Purchased Assets from the Debtor to Buyer at the Closing(s) and the binding nature of all closing documents related thereto.

38. As a condition of approval of this sale, The Debtor and US Foods, Inc. ("US Foods") have agreed that upon closing: (1) all security interests that US Foods has in the Purchased Assets and the proceeds of the sale of the Purchased Assets shall be released; (2) that US Foods shall not seek any recovery from the sales proceeds for any of its claims; (3) that US Foods shall be granted a release from all claims under Chapter 5 of the Bankruptcy Code that could be brought by the Debtor or any other party with standing to bring claims under Chapter 5 of the Bankruptcy Code including without limitation, the Debtor, any statutory committee appointed in this bankruptcy case, any Chapter 11 trustee, and any chapter 7 trustee; and (4) that US Foods shall be paid its asserted PACA Claim in full consistent with paragraph 40 herein.

39. The Debtor and Perkins & Marie Callendar's, LLC ("PMC") have agreed that PMC's collective administrative claims shall not exceed $160,000.00 and that payment of any administrative claims shall be deferred consistent with paragraph 40 herein.

40. Closing of the Sale Transaction must close in accordance with the terms of the Purchase Agreement with the proceeds of the sale to be distributed to Robert O Lampl as Escrow agent to be held in escrow. Robert O Lampl as Escrow Agent shall be immediately authorized to make a $10,000.00 payment to Hitachi Capital America, Corp. ("Hitachi"). Upon receipt of this payment, any liens Hitachi has on the proceeds of the within sale and on the proceeds of the sales contemplated by the Motions filed at Doc. Nos. 149, 151 and 153 shall be forever released. Hitachi reserves its right to assert an unsecured claim for any deficiency and to pursue any guarantors of the underlying debt.

Except as set forth herein, there shall be no further disbursements of the sale proceeds until the Court has entered an Order approving a Settlement Agreement between the Debtor on the one hand and STORE Capital Acquisitions, LLC ("STORE Capital) and STORE Master Funding XIII, LLC ("STORE Master" and together with STORE Capital, "STORE") on the other as STORE holds a first position lien on a significant portion of the Purchased Assets. Upon the entry of an Order approving a Settlement Agreement between the Debtor and STORE, Robert O Lampl as Escrow Agent shall authorized to disburse funds for the following without further Order of Court:

    (a)    Post-Petition Payroll;

    (b)    Post-Petition Payroll Taxes;

    (c)    Post-Petition Sales Taxes;

    (d)    U.S. Trustee Fees;

(e) Payment of US Foods' PACA claim. This payment shall be made within forty-eight (48) hours of Robert O Lampl as Escrow Agent's receipt of the sale proceeds. Furthermore, in the event that the STORE Settlement Agreement has not been approved within forty-eight (48) hours of Robert O Lampl as Escrow Agent's receipt of the sale proceeds, the Debtor shall be still be required to make this payment. However, if the STORE Settlement Agreement has not been approved, said payment shall be made from funds other than the sale proceeds.

(f) Payment of Reinhart's open post-petition invoices in the amount of ~~$2,430.79~~ $3631.55

(g) $200,000 to the following parties, to be held in escrow pending an approved fee application:

   (i) $75,000 to Compass Advisory Partners, LLC,

   (ii) $75,000 to Robert O Lampl, and

   (iii) $50,000 to Bernstein-Burkley, P.C.

All other administrative claims not specifically provided for herein shall be deferred until after the payments set forth in subparagraphs (a) through (g) are made in full.

Date: 9/5/19

Carlota M. Böhm
Chief United States Bankruptcy Court Judge

FILED
9/5/19 11:31 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA