# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 19-22715-CMB |
| | : | |
| 5171 Campbells Land Co., Inc. | : | Chapter 11 |
| | : | |
| Debtor | : | Document No. |
| | : | |
| 5171 Campbells Land Co., Inc., | : | Related to Document No. 491 |
| | : | |
| Movant | : | |
| v. | : | |
| | : | |
| L-Four, L.P., | : | |
| | : | |
| Respondent. | : | |

**OBJECTION TO THE APPLICATION OF ROBERT O LAMPL LAW OFFICE FOR FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR THE DEBTOR FOR THE PERIOD OF JULY 2, 2019 THROUGH MARCH 17, 2020**

AND NOW comes the Respondent, L-Four, L.P. ("L-Four"), by and through its counsel the Lynch Law Group, LLC, objects to the Application of Robert O Lampl Law Office for Final Compensation and Reimbursement of Expenses as Counsel for the Debtor for the Period of July 2, 2019 through March 17, 2020 ("Application").

## PRELIMINARY STATEMENT

As this Court is aware, the bankruptcy of 5171 Campbells Land Co. has produced a great deal of litigation, very few assets, and little or no recovery for creditors. At the outside of this bankruptcy case, the office of the U.S. Trustee moved this Court to appoint an independent trustee to oversee the bankruptcy, and also objected to the initial petition on behalf of Debtor to employ the Robert O' Lampl Law Office (the "Lampl Firm" or "Counsel for Debtor") due to apparent conflicts of interest. At that time, counsel for L-Four expressed our own concerns regarding whether Debtor should be allowed to remain in possession and whether the Lampl Firm could

adequately serve as Counsel for Debtor due to its pre-existing representation of Billy Kane and other purported owners of Debtor. Nevertheless, in order to proceed with the sale of Debtor's assets as quickly as possible and thus save numerous jobs, L-Four did not raise formal objection at that time. Over a year later, the worst fears of creditors and the U.S. Trustee's office have been realized. In hindsight, it is now obvious that the Lampl Firm's conflicting obligations to Billy Kane materially impeded and delayed the bankruptcy process. As a result, the only progress in over a year has been the fire sale of Debtor's assets and the appointment of a plan administrator who must investigate the affairs of the Debtor both pre and post-bankruptcy from scratch, with insiders of Debtor and allies of Billy Kane blocking that process at every turn.

Based on long-established precedent, there is only one recourse left to creditors. The Lampl Firm must be held responsible for its conflict of interest, and the Application for fees must be denied.

## BACKGROUND

1. On July 10, 2019, the Debtor filed the Application to Employ Robert O Lampl Law Office as Counsel for the Debtor.[1]

2. On July 29, 2019 the U.S. Trustee filed an Objection to the approval to the Debtor's Application for Approval of Attorneys because of a preferential payment from the debtor and "other potential conflicts of interest may arise from proposed counsel's representation of insiders of the Debtor." ECF No. 99.

---

[1] In making its findings, the Court does not need an evidentiary hearing on these matters as all averments of facts can be found in documents previously filed with this Court or through the dockets of its sister courts.

3. At the subsequent hearing on the U.S. Trustee's Objection, counsel for L-Four confirmed on the record that L-Four shared the Trustee's concerns, but had elected not to file its own objection to the Lampl Firm being retained as counsel for the Debtor due to the emergency need to sell the assets. At that time, moreover, the Lampl Firm made representations to the Court and to counsel for multiple creditors that the Lampl Firm would not be representing Billy Kane on an individual basis moving forward.

4. For a time, it appeared that the Lampl Firm did intend to cease its simultaneous representation of Billy Kane and cure the conflict of interest. Attorney Dennis Blackwell entered his appearance at Mr. Kane's deposition in this bankruptcy action and represented that he was Mr. Kane's individual counsel, while the Lampl Firm was acting as counsel for the Debtor.

5. However, the Lampl Firm did not take sufficient steps to cure any conflict inherent in their representation of Billy Kane, and instead resumed representing Mr. Kane in his individual capacity while still acting as Counsel for Debtor.

6. The Lampl Firm filed the instant Chapter 11 application on July 8, 2019. This Honorable Court appointed Lampl Firm as Debtor's counsel on October 4, 2019. ECF No. 290.

7. On August 13, 2020, Lampl Firm filed an Application for Final Compensation for his attorney's fees. ECF No. 491.

**ARGUMENT**

8. This Honorable Court should deny the firm's Application because it has violated its fiduciary duties to the Debtor. The court may award a professional reasonable compensation and reimbursement for "actual, necessary services" provided to the debtor. 11 U.S.C. § 330(a)(1)(A).

9. In determining the value of services, 11 U.S.C. § 330(a)(3) provides six factors for the court to consider including "whether services were necessary to the administration of, or beneficial toward the completion of the case." Id.; see also In re Grasso, 586 B.R. 110, 143, citing In re Jade Mgmt. Servs., 386 Fed. Appx. 145 (3rd. Cir. 2010).

10. Further, the burden is on the attorney application to demonstrate necessity for payment. In re Grasso, 586 B.R 142 (Bankr. W.D. Pa. 2018) citing Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 268 (1941).

11. In instances such as this present matter, a bankruptcy court may deny — and even disgorge — a debtor's attorney of compensation if the attorney has or fails to maintain disinterestedness in the proceedings due to conflicting interests, and shall not compensate the attorney if his services are unnecessary duplication of services or if the services were not reasonably likely to benefit the debtor's estate. 11 U.S.C. § 328 and 11 U.S.C. § 330(a)(4).

12. The Lampl Firm's conduct would fall under both categories. The Lampl Firm failed to maintain disinterestedness in the proceedings through conflicts of interest, and the services of the Lampl Firm as Counsel for Debtor materially impeded the administration of this bankruptcy case due to their failure to advance claims by the Debtor's estate due to the conflict of interest.

*The Existence of a Conflict of Interest Requires Denial of Attorneys' Fees*

13. As this Court is well aware, in order to act as counsel for the Debtor, the proposed firm must be disinterested. Federal statute prohibits counsel for the Debtor from representing interests adverse to the debtor's estate. 11 U.S.C. § 327(a).

14. An adverse interest is defined as "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute." In re N. John Cunzolo Assocs., 423 B.R. 735, 737 (Bankr. W.D. Pa. 2010) (internal quotations omitted)

15. The Lampl Firm is well aware of the prohibition on conflicts of interest. In re N. John Cunzolo Assocs., supra, is a case from this court in which the Lampl Firm was disqualified from representation of a debtor due to the conflict inherent in their representation of debtor's principal.

16. Additionally, 11 U.S.C. § 327 requires that a disinterested person be one that "does not have an interest materially adverse to the interest of the estate or of any class of creditors.'" Id. This disinterestedness is imputed to an attorney if they represent disinterested individuals. Because of these concerns, dual representation of a closely held corporation and a principal is disfavored. Id.; ICM Notes, Ltd. V. Andrews & Kurth, L.L.P., 278 B.R. 117 (S. D. Tex. 2002).

17. Furthermore, these fundamental ethical obligations are mirrored in the Pennsylvania Rules of Professional Conduct Rules 1.6 and 1.7.

18. At all material times, Billy Kane was, and remains, the controlling principal of the Debtor, which is a closely held corporation. This situation automatically disfavored because of the heightened concerns that a conflict will arise. In re N. John Cunzolo Assocs., 423 B.R. at 737.

19. At the commencement of this immediate matter, the Lampl Firm had two pre-existing conflicts of interest. First, Lampl Firm represented Mr. Kane and the Debtor in several other litigation matters. Upon commencing this bankruptcy matter, the Lampl Firm did not end its representation of Mr. Kane in his other pending cases in both state and federal courts. Second, in anticipation of this matter, the Lampl Firm received a preference payment for its representation of the Debtor and Mr. Kane. ECF. No. 276.

20. The Lampl Firm attempted to remedy one portion of the by returning a portion of its preference payment to the Debtor's estate. See Id.

21. Unfortunately, the Lampl Firm did not cure the rest of the pre-existing conflict. At the time of the filing of the Chapter 11 application, the Lampl Firm represented Billy Kane in his individual capacity in the following **six** civil actions:

    i. a pending breach of employment and equity contract action in the Court of Common Pleas of Allegheny County, Pennsylvania captioned Steven Maglin v. 5171 Campbells Land Co., LLC, William T. Kane, Tyler Mann, Krissy Kochis and Ronald G. Linaburg and docketed at No. GD 18-4336 (**representing William Kane, Tyler Mann and Krissy Kochis**);

    ii. three pending confession of judgment actions in the Court of Common Pleas of Allegheny County, Pennsylvania, all three of which are captioned L-Four, L.P. Successor in Interest to 5171 CRR Associates, LLC v. 5171 Campbells Land Co., Inc., William T. Kane and Simon Cote and docketed at GD 19-2820, GD 19-2821 and GD 19-2822 (**representing both the Debtor and William Kane**); and

    iii. a pending mandamus action for access to corporate books and records 5171 Campbells, one of the several purposes of which is to resolve the dispute regarding ownership and control of the Company, in the Court of Common Pleas of Allegheny County, Pennsylvania, which is captioned L-Four, L.P., and Ronald G. Linaburg, D.M.D. v. 5171 Campbells Land Co., Inc.; 5171 Campbells Land Co., LLC; William T. Kane, and Robert E. Dauer, Jr. and docketed at GD 19-2405 (**representing Debtor, Kane, and Rob Dauer**);

    iv. a pending federal action in this district instituted by Store Capital and which

is captioned Store Capital Acquisitions, LLC and Store Master Funding XIII, LLC v. 5171 Campbells Land Co., Inc., William Kane, Frank Kane and Ron Linaburg and docketed at 2:19-cv-685-WSS (**representing the Debtor, William Kane and Frank Kane**);

    v. a civil action captioned Marc Group LLC v. William T. Kane, et al., in the Court of Common Pleas of Allegheny County, Pennsylvania, docketed at GD-19-002487 (**representing Debtor and William Kane**); and

    vi. a civil action captioned Peter D. Kaplan, M.D., v. 5171 Campbells Land Company, LLC and William T. Kane, pending in the Court of Common Pleas of Allegheny County, Pennsylvania, docketed at GD-18-006986 (**representing Debtor and William Kane**).

  22. Based upon the dockets of the foregoing civil actions, the Lampl Firm has not withdrawn from representation of Billy Kane in any of the foregoing matters, nor has Billy Kane secured co-counsel to represent him in his individual capacity in these cases.

  23. The Lampl Firm's own application for approval of fees confirms that in July 2019, shortly after the filing of the Chapter 11 application, they were aware that they could no longer represent Billy Kane on an individual basis due to the conflict of interest. See ECF No. 491, pg. 18 (time diaries discuss "someone needs to represent Bill individually").

  24. While Attorney Dennis Blackwell undertook representation of Billy Kane for purposes of Kane's deposition early in this bankruptcy case, the Lampl Firm has not only continued to represent Billy Kane, it has expanded that representation.

  25. On August 8, 2019, US Foods, Inc., filed suit in the U.S. District Court for the Western District of Pennsylvania against Billy Kane and Dr. Ronald Linaburg, D.M.D., at docket No. 2:19-cv-946-JFC.

26. On November 1, 2019 (less than one month after their approval as Counsel for Debtor by this Court), the Lampl Firm entered their appearance on behalf of Billy Kane in the U.S. Foods action.

27. Furthermore, as of December 24, 2019, the Lampl Firm has appeared on behalf of Frank Kane, brother to Billy Kane and another insider of the Debtor, in the civil action brought by Store Capital Acquisitions, LLC, supra, as well as on behalf of Billy Kane.

28. In their capacity as counsel for Billy Kane, Frank Kane, and other insiders of the Company, the Lampl Firm have now taken positions in litigation which are directly at odds with their representations to this Court in the instant bankruptcy.

29. As this Court is well aware, throughout the pendency of this bankruptcy, the Lampl Firm, acting as Counsel for the Debtor, has represented that Billy Kane is the sole officer and director of 5171 Campbells Land Company, Inc., and that he has authority to make all decisions for the company including the filing of the bankruptcy application and the sale of the Debtor's assets.

30. Nevertheless, in the U.S. Foods civil action, the Lampl Firm, on behalf of Billy Kane, has plead (as part of its Answer, Affirmative Defenses, and Crossclaim) that Dr. Ronald Linaburg was the sole individual with responsibility and control over Debtor.

31. It is precisely this type of contradictory pleading that the strict rule against conflicts of interest is designed to prevent. The Lampl Firm cannot be allowed to claim that Billy Kane is in sole control of Debtor when it suits Billy Kane's purposes in this Court, and then be permitted to claim that Billy Kane has no responsibility for Debtor in other courtrooms, when it suits Billy Kane's purposes.

32. This Honorable Court can – and should – deny the Lampl Firm's Application for attorney's fees on the mere existence of a conflict of interest. Gray v. English, 30F.3d 1319, 1324 (10th Cir. 1994) ("the court should lean strongly toward denial of fees… This approach is most in keeping with common law fiduciary principles and best serves the deterrence purpose of the rule."). Courts are strict to prohibit the award of fees to an attorney with even the slightest hint of a conflict of interest because it calls into question the reasonableness of attorney's fees and the value of representation to the estate. See In re Wild Horse Enterprise, Inc., 136 B.R. 830, 843-844 (Bankr. C.D. Cal. 1991).

33. While denial of the fee application and disgorgement of fees may appear to be an extreme sanction, it is in keeping with the general rule that an attorney is not permitted to profit off a conflict of interest.

34. In choosing not to cure itself of conflicts of interests, and in choosing to undertake new attorney-client relationships following their appointment as Counsel for the Debtor when those relationships posed a conflict of interest, the Lampl Firm has brought this objection upon themselves.

*The Lampl Firm's Conflict Materially Impeded this Matter*

35. The firm's conflicts have materially impeded this bankruptcy by failing to investigate and by failing to maximize value for the Debtor and creditors.

36. The Court must consider whether an attorney must demonstrate that their services aided in the bankruptcy proceedings before awarding attorney's fees. In re Jade Mgmt. Servs., 386 Fed. Appx. 145 (3rd. Cir. 2010).

37. "Professionals who violate their fundamental obligations to the estate in their charge do not provide 'valuable services' to those same estates' and are thus not entitled to services." Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434 449 (C. D. Utah 1998).

38. The Lampl Firm violated two of its fundamental obligations in this matter by failing to investigate claims on behalf of the Debtor against insiders, such as Billy Kane.

39. "A debtor's attorney is not hired merely to file documents with this Court." In re Grasso, 586 B.R. at 146. It is incumbent that the debtor's attorney must conduct a reasonable investigation into the debtor's assets independent of the client's representation of the situation.

40. Between the filing of this matter in July 2019 and this Honorable Court's Order Confirming Debtor's Chapter 11 Plan of Liquidation dated March 18, 2020, the Lampl Firm has acted as a mere conduit for filing documents and has relied entirely upon Compass Advisory Partners, LLC to sell the Debtor's assets. ECF Nos. 1 and 435.[2]

41. The Lampl Firm has not shown any effort to investigate whether there were any claims against insiders or third parties either before or after Compass Advisory Partners, LLC sold the assets.

---

[2] Additionally, there are several inconsistencies with formatting and errors in the Application. For example, on the Summary Cover Sheet, the firm states that it has not received any previous compensation for its services. As this Court is aware, the Lampl Firm previously received both a retainer payment and payment pursuant to the sale of Debtor's assets. And, on pages 7 and 9, the Lampl Firm's application has four duplicated time and billing entries.

42.     The Lampl Firm's representation prevents the investigation of claims against insiders or third parties because it represents Mr. Kane, an insider who will likely face claims for his poor administration of the Debtor.

43.     The Debtor purchased its assets at auction from Unique Ventures Group, LLC for $4.77 million in cash consideration plus various assumed liabilities in February 2018. In re Unique Ventures Group, LLC, at case No. 17-20526-TPA.

44.     In total, the assets purchased from Unique Ventures Group, LLC substantially depreciated causing them to be sold for less than $1 million in total. See ECF Nos. 234, 235, 236, and 278.

45.     During the 18 months that the Debtor owned the assets purchased from Unique Ventures Group, LLC, the Debtor incurred roughly an additional $20 million in debt. ECF No. 122.

46.     40.     The wasting of these assets over a period of 18 months and the voluminous debt incurred calls into question whether criminal malfeasance occurred during the management of the Debtor after the asset purchase from Unique Ventures Group, LLC.

47.     As of this date, the Plan Administrator is involved in investigating potential claims against third parties and insiders, including Mr. Kane.  That no investigation occurred earlier can only be explained because Counsel for the Debtor had a material conflict of interest which prevented it from investigating Mr. Kane or his associates.

48.     By failing to investigate these claims, the Lampl Firm has breached its fiduciary duty to be actively concerned for the interest of the estate and its beneficiaries, i.e. creditors. In re Whitney Place Partners, 147 B.R. 619, 621 (Bankr. N.D. Ga. 1992) (holding that an attorney cannot "close their eyes" when the debtor is not acting in the best interest of the estate and its

creditors). Instead, the firm has closed its eyes to the conflicts of interest and the harm caused by Mr. Kane's management of the Debtor.

49. The Lampl Firm's failure to investigate additional claims against insiders and third parties because of their conflict of interest is a violation of the firm's fiduciary duty to the estate and ultimately its creditors, which has materially impeded these proceedings.

50. A conflict of interest automatically "taints" the advice given by an attorney because the attorney cannot provide meaningful advice for both interested parties. See In re Wild Horse Enterprise, Inc., 136 B.R. at 843-844. The court in In re Wild Horse Enterprise Inc. held that it was important to strictly adhere to the rule to disqualify attorneys with the slightest conflicts because the interest in preventing escalating conflicts was paramount. Id.

51. To protect the Debtor and its creditors, the Lampl Firm should have investigated Mr. Kane's mismanagement of the Debtor during this period to preserve any assets. Instead, the Lampl Firm closed its eyes to the malfeasance of Mr. Kane during his management of the Debtor.

52. Ultimately, the firm's conflicts of interest have materially impacted these proceedings. Its dual representation of Mr. Kane and the Debtor have prevented the firm from investigating any claims against insiders and third parties. Prior to plan confirmation, the only actions taken in this bankruptcy case were the fire sale of Debtor's assets.

53. Given the extensive assistance provided by Compass Advisory Partners on the sale of the Debtor's assets, any firm of minimum competency could have served as Counsel to the Debtor. There was no need for Debtor to retain the Lampl Firm, in light of that firm's conflict of interest, except to delay and prevent any meaningful investigation of insiders.

54. This Honorable Court should deny the Lampl Firm's Application because it violated its fiduciary duties to the Debtor and the creditors in this matter. The Lampl Firm's

numerous violations of its fiduciary duties has materially impaired these proceedings through its failure to investigate and failure to ensure that the Debtor's assets were not waisted. All these actions individually are sufficient for the Court to deny the Lampl Firm's Application.

55. Not only should this Honorable Court deny the Application, the Court should disgorge the Lampl Firm of any previously approved attorney's fees.

56. Section 11 U.S.C.S. § 329(b) provides that "if such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment to the extent excessive."

57. In instances were an attorney has a conflict of interest, courts have permitted the disgorgement of attorney's fees. Paul J. Winterhalter, P.C. v. Office of the U.S. Tr. (In re Harris Agency, LLC), 462 B.R. 514, 527 (E.D. Pa. 2011), see also In re Grasso, 586 B.R. at 164, In re Burton, 442 B.R. 421 (2009).

58. Courts are given the authority to disgorge compensation previously approved because "'every dollar expended on professional fees results in a dollar less that is available for distribution to creditors.'" In re Poseidon Pools of Am., 180 B.R. 718, 729 (Bankr. E.D.N.Y. 1995), citing In re Gillett Holdings, 137 Bankr. 462, 466 (Bankr. D. Colo. 1992).

59. There is no need for any evidentiary hearing, as the facts upon which the Court's judgment depends are all matters of public record and susceptible to judicial notice. The actual motivations or subjective beliefs of Counsel for the Debtor or of Mr. Kane are irrelevant to the

Court's determination of conflict of interest. Accordingly, as the record is sufficient on its face, there is no need for additional proceedings to adjudicate this matter.

## CONCLUSION

WHEREFORE, Respondent, L-Four, L.P., respectfully requests that this Honorable Court deny the Application of Robert O Lampl Law Office for Final Compensation and Reimbursement of Expenses as Counsel for the Debtor for the Period of July 2, 2019 through March 17, 2020, disgorge any attorney's fees previously granted to Robert O Lampl Law Office, find that the Lampl Firm has a conflict of interest, and enter such other relief as the Court deems proper.

Respectfully Submitted,

THE LYNCH LAW GROUP, LLC

*/s/ Michael P. Oliverio*
Michael P. Oliverio, Esq.
Pa. I.D. No. 209399
Michael C. Mazack, Esq.
Pa.I.D. No. 205742
501 Smith Dr., Suite 3
Cranberry Township, PA 16066
moliverio@lynchlaw-group.com
(724) 776-8000 Counsel for Respondent
L-Four, L.P.