**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>5171 CAMPBELLS LAND CO., INC.,<br><br>      Debtor. | Bankruptcy Case No. 19-22715-CMB<br><br>Chapter 11 |
| ROBERT S. BERNSTEIN, ESQ., Plan Administrator,<br><br>      Movant,<br><br>  v.<br><br>No Respondents. | |

**MOTION FOR ENTRY OF AN ORDER (I) APPROVING BID PROCEDURES FOR SALE OF THE DEBTOR'S REAL PROPERTY; (II) AUTHORIZING AND SCHEDULING AN AUCTION; (III) SCHEDULING A HEARING FOR APPROVAL OF THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS; (IV) APPROVING CERTAIN DEADLINES AND THE FORM, MANNER, AND SUFFICIENCY OF NOTICES; AND (V) GRANTING RELATED RELIEF**

Robert S. Bernstein, Esquire, Plan Administrator in the above-captioned Chapter 11 case (the "Plan Administrator") by and through his undersigned counsel, Bernstein-Burkley, P.C., files this *Motion for an Order (i) Approving Bid Procedures for Sale of the Debtor's Real Property; (ii) Authorizing and Scheduling an Auction; (iii) Scheduling a Hearing for Approval of the Sale of Real Property Free and Clear of Liens; (iv) Approving Certain Deadlines and the Form, Manner, and Sufficiently of Notices; and (v) Granting Related Relief* (the "Bid Procedures Motion"), and respectfully represents as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Western District of Pennsylvania (this "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This matter is a "core" proceeding in accord with 28 U.S.C. § 157(b)(2).

3. Sections 105 and 363 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, "Bankruptcy Code") and Rules 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") serve as the statutory bases for the relief requested in this Motion.

## BACKGROUND

4. On July 8, 2019, 5171 Campbells Land Co., Inc. (the "Debtor") filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at case no. 19-22715-CMB (the "Case").

5. On November 12, 2019, the Debtor filed its *Chapter 11 Plan of Liquidation Dated November 12, 2019* (the "Plan") [Doc 308] and accompanying disclosure statement (the "Disclosure Statement") [Doc 309].

6. On March 18, 2020, the Court entered the *Default Order Confirming Debtor's Chapter 11 Plan of Liquidation Dated November 12, 2020* (the "Confirmation Order") [Doc 435] and the *Post-Confirmation Order and Notice* (the "Post-Confirmation Order") [Doc 436].

7. Pursuant to paragraph 8 of the Confirmation Order, Robert S. Bernstein, Esq. was appointed as the Plan Administrator.

8. The Debtor owns a parcel of vacant property located at 5171 Campbells Run Road, Pittsburgh, PA 15205 located in Robinson Township, Allegheny County, containing approximately 1.0583 acres of land at Block and Lot 0334-G-00015 (the "Property").

9. As set forth in the Confirmation Order and pursuant to the Plan, the Plan Administrator has authority to file a motion for approval of the sale of the Property.

10. The Plan Administrator is proposing to sell the Property (the "Sale"). The Property is encumbered by a lien held by First National Bank of Pennsylvania ("the "Bank") and the Bank has consented to the Sale

and to this Motion. The property is also subject to a disputed lien in favor of L-Four L.P.. L-Four L.P. has consented to the sale.

11. The Plan Administrator has previously engaged Hanna Langholz Wilson Ellis ("Broker") as a broker to assist Plan Administrator in the Sale of the Property.

12. As a result of the Broker's efforts, the Plan Administrator entered into an asset purchase agreement (the "Agreement of Sale"), through which the Plan Administrator received an offer from Hutton Pittsburgh Campbell PA Street, LLC (the "Stalking Horse Bidder") to purchase the Property for eight hundred and fifty thousand dollars and 00/100 ($850,000.00) (the "Stalking Horse Bid") pursuant to the terms and conditions of the Agreement of Sale and received a deposit of twenty-five thousand dollars and 00/100 ($25,000.00) from Stalking Horse Bidder (the "Stalking Horse Deposit").

13. Pursuant to the Agreement of Sale, the Stalking Horse Bidder has a termination right "(Due Diligence Period") for 75 days from the date of execution of the Agreement of Sale.

14. Contemporaneously with the filing of this Bid Procedures Motion, the Plan Administrator is filing a *Motion for Entry of an Order (I) Approving Sale of Property Free and Clear of Liens and Encumbrances, and (II) Granting Related Relief* (the "Sale Motion").

15. Pursuant to the Sale terms, the Buyer is to pay upon the closing of the Property. The Sale of the Property is "as is, where is" without any representations or warranties from the Debtor or the Plan Administrator as to the quality or fitness of such real property for either its intended use or any other purpose.

16. By this Motion, the Plan Administrator seeks approval of the Sale of the Property at the highest price offered by potential buyers at an Auction (hereinafter defined).

17. If this Bid Procedure Motion is granted, the bidding procedures set forth herein shall govern the sale of the Property contemplated in the Sale Motion.

**RELIEF REQUESTED**

18. By this Motion, the Plan Administrator seeks entry of an order (i) approving bid procedures for sale of the Debtor's Real Property (the "Bid Procedures"); (ii) authorizing and scheduling an auction (the "Auction"); (iii) scheduling a hearing for approval of the sale of the Real Property (the "Sale Confirmation Hearing"); and (iv) approving certain deadlines and the form, manner, and sufficiency of notices (the "Sale Notice").

19. The Plan Administrator proposes to conduct the sale process and auction on the following timeline:

| | |
|---|---|
| Within three business days from the entry of the Order approving the Bid Procedures | Plan Administrator shall serve Notice of Sale, in the form attached hereto as **Exhibit B**, on all creditors and parties in interest. |
| Sixty days from the entry of the Order approving the Bid Procedures | Final Bid Deadline; deadline to object to the Sale of the Real Property (the "Objection Deadline"). |
| Ten business days after the Bid Deadline | Auction shall occur via zoom at Sale Hearing. Bidders shall have the ability to participate in the Auction remotely via Court's zoom procedures. |
| Three days from the Auction | Deadline to submit notice of successful bidder(s) |

20. The Plan Administrator believes that conducting the sale process within the timeline set forth above and in accordance with the Bidding Procedures will provide all interested parties with sufficient time and notice to submit bids for the purchase of the Real Property. The Auction will be scheduled to occur after the end of the Due Diligence Period.

21. In its business judgment, the Plan Administrator has determined that a reasonable marketing period, as set forth by the sale process, will provide the Plan Administrator with the best opportunity to maximize the value of the Real Property for the benefit of the bankruptcy estate.

22. The proposed sale process is intended to maximize the value of the Real Property while limiting additional administrative expenses incurred by the bankruptcy estate.

I.      **BIDDING PROCEDURES**

23. The Bidding Procedures are intended to provide a fair, timely and competitive sale process consistent with the timeline of the Case.

24. The Plan Administrator requests that the Court approve the following Bidding Procedures which shall govern the conduct of the sale of the Property:

(a)     Solicitation Process; Distribution of Bidding Procedures. The Plan Administrator shall distribute (i) the Sale Notice and (ii) these Bidding Procedures (as approved by the Court) as required in connection with the Bid Procedures Motion and as set forth in the Notice Procedures below. Further, the Plan Administrator shall distribute the Sale Motion and the Bidding Procedures to those parties the Plan Administrator determines may have or demonstrate an interest in acquiring the Property.

(b)     Potential Bidders; Due Diligence. Upon the written request of a potential bidder, the amount of the highest Qualified Competing Bid (as defined herein) for the Property shall be provided by the Plan Administrator as of the date of the request. The Plan Administrator shall afford each potential bidder due diligence access to the Property, to the same extent as provided to Stalking Horse Bidder in the Agreement of Sale, except that the due diligence period for any potential bidder shall extend through 5:00 PM EST on the Bid Deadline (as defined herein).

(c)     Qualified Bidders; Qualified Bids. In order to be eligible to bid on the Property at the Sale Hearing, each bidder, other than the Stalking Horse Bidder, who is deemed to be a Qualified Bidder and having submitted a Qualified Bid, must be a "Qualified Bidder," which is a bidder that has submitted a Qualified Competing Bid (as defined herein)[1]. Within three (3) business days after the Plan Administrator receives from a potential bidder all of the materials required to be submitted pursuant to subparagraph (d)(i) below, the Plan Administrator shall make an initial determination, subject to final review, consideration and determination by the Court, whether a potential bidder is a Qualified Bidder and has submitted a Qualified Competing Bid. After such initial determination is made, and by the end of the third business day following receipt of the potential bid, the Plan Administrator will notify the potential bidder of the decision. Any bid that is determined by the Plan Administrator to be a Qualified Competing Bid (as defined below) shall be provided promptly to the Stalking Horse Bidder by the Plan Administrator within three business days after such determination is made.

(d)     Submission of Bid. Unless otherwise agreed upon by the Plan Administrator, in order to be considered for status as a Qualified Bidder, a bidder must:

(i)     Deliver to the Plan Administrator (Robert S. Bernstein, Esquire, 707 Grant Street, Suite 2200, Gulf Tower, Pittsburgh, PA 15219 (email: rbernstein@bernsteinlaw.com)) so as to be received within sixty (60) days of the Court's

---

[1] For the avoidance of doubt, the Bank shall also be deemed a qualified bidder and shall not be required to submit the deposit to participate in the Auction.

entry of an order approving the Bid Procedures t ("Bid Deadline"), a written offer for the Property at a price equal or exceeding the Minimum Overbid (as hereinafter defined) and accompanied by the following ("Qualified Competing Bid"):

(A) An executed version of the Agreement of Sale, modified so that (w) the Qualified Bidder shall be appropriately identified as the Buyer, (x) the Purchase Price thereunder shall be the Qualified Competing Bid of such Qualified Bidder; (y) any credit bid by a secured creditor that may be permitted by the Court shall nevertheless be paid in sufficient cash to pay, in addition to all costs required by the Bid Procedures Order and after the return of the Deposit to the Stalking Horse Bidder as provided in the Agreement of Sale, the maximum amount of the Break-Up Fee as an administrative expense (with any remaining balance of such maximum amount to be returned upon the Court's determination of the allowable Break-Up Fee), and (z) there shall be no Break-Up Fee except as provided for in this Motion in favor of the Stalking Horse Bidder, subject to final approval by the Court . In the event that the bidder submits an executed Agreement of Sale with any permitted changes to the form of Agreement of Sale as hereinabove provided, those terms must be noted in redline in the executed version of the Agreement of Sale submitted by the bidder;

(B) Proof, in a form satisfactory to the Plan Administrator, of the bidder's financial ability to consummate its offer to purchase the Property. **NO FINANCING CONTINGENCIES WILL BE PERMITTED;**

(C) To the Plan Administrator's satisfaction (i) fully disclose the identity of each individual or entity that will be bidding for the Property or otherwise participating in connection with the Transaction, and (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring the Property, the parties that will bear liability for any breach of such entity;

(D) An earnest money deposit of $25,000.00 ("Qualified Bidder Deposit") by cashier's or certified check (made payable to the Plan Administrator) or wire transfer of immediately available funds;

(E) A written acknowledgement by such Qualified Bidder that it agrees to the terms of the Bidding Procedures.

(ii) Submit a bid in the minimum amount of Nine Hundred Thousand Dollars and 00/100 ($900,000.00) ("Minimum Overbid") to be considered.

(iii) Not request and waive any claim of the Qualified Bidder to any Break-Up Fee, or similar type of payment.

(e) Denial of "Qualified Bidder" Status to Non-Conforming Bids. Subject to final determination by the Court, at the Plan Administrator's discretion, the Plan Administrator may decline to accept as Qualified Competing Bids any bids that do not substantially conform to the foregoing requirements and any other procedures set forth in the Bidding Procedures Order, provided that the bid in question equals or exceeds the Minimum Overbid. The Plan Administrator

shall have the right to negotiate with any bidder with respect to clarification or enhancement of any bid. Any Qualified Bidder shall also have the right to challenge any bid, except the Stalking Horse Bidder's Qualified Bid under the Agreement of Sale or as otherwise made in excess thereof in accordance with the terms hereof, as being designated a Qualified Bid by filing an Objection to Qualified Bidder Status with the Court prior to the Sale Hearing.

(f) <u>Bid Deadline; Reporting of Qualified Competing Bids</u>. All Qualified Competing Bids must be submitted to the Plan Administrator so as to be received not later than the Bid Deadline. If the Plan Administrator does not receive any Qualified Competing Bids by the Bid Deadline, Plan Administrator shall promptly report the same to the Stalking Horse Bidder and the Court.

(g) <u>Participation in Auction; Successful Bidder</u>. If one or more Qualified Competing Bids are received, an auction ("Auction") will be conducted at the Sale Hearing via Zoom. Only a Qualified Bidder that has submitted a Qualified Competing Bid(s) will be eligible to participate in the Auction. The bidding at the Auction shall start at the Minimum Overbid. Competing bidders, including Stalking Horse Bidder, may submit bids for the Property in excess of the Minimum Overbid, provided that such bids are in increments of twenty-five thousand dollars and 00/100 ($25,000.00) and are Qualified Competing Bids. The Court shall select the highest Qualified Competing Bid(s) ("Successful Bid") from the Qualified Bidder(s) ("Successful Bidder"). The Auction shall be conduction

(h) <u>Loss of Deposit</u>. If the failure by the Successful Bidder to consummate the purchase is the result of such Successful Bidder's breach of, or default or failure to perform under any Successful Bidder sale documents or the terms of these Bidding Procedures (such bidder being a "<u>Defaulting Bidder</u>"), such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to the Plan Administrator and the Plan Administrator shall thereupon have the right to assert all rights and remedies provided under applicable law, including but not limited to, specific performance.

(i) <u>Late Bids</u>. A bid submitted after the Bid Deadline or that is not a Qualified Competing Bid will not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Plan Administrator nor any other person will have any obligation to seek such an order from the Bankruptcy Court.

(j) <u>Return of Deposit</u>. Except as provided herein, all deposits shall be returned to each bidder not selected by the Plan Administrator as the Successful Bidder no later than five (5) business days following the substantial consummation of the sale to the Successful Bidder, except for the Back-up Bidder (as defined below).

(k) <u>Back-Up Bidder</u>. If an Auction is conducted, the party with the next highest and best Qualified Competing Bid, as determined by the Court, shall serve as a back-up bidder ("<u>Back-Up Bidder</u>") and keep such bid open and irrevocable until the closing of the Sale transaction with the Successful Bidder. The Back-Up Bidder's deposit will be returned by no later than the fifth (5th) business day after the closing of the Sale transaction with the Successful Bidder. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder for purposes of selecting the Back-Up Bidder, in accordance with the terms of the Agreement of Sale. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale because of (a) the failure of a condition precedent beyond the control of either the Plan Administrator or the Successful Bidder or (b) a breach or failure

to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Plan Administrator will be authorized to consummate the Sale with the Back-Up Bidder without further Court order. If the sale is not concluded with a Successful Bidder, and there are no remaining Back-Up Bidders that are willing to consummate the sale of the Property shall be sold to the Stalking Horse Bidder as provided in the Agreement of Sale.

(l)  <u>First National Bank of Pennsylvania's Credit Bid</u>.  The First National Bank of Pennsylvania's rights to credit bid shall be preserved. In the event of such credit bid, it shall contain sufficient cash to pay the expenses of sale (including counsel fees and broker commission), as well as the Estate's share of any closing costs.

25. In determining whether a sale satisfies the business judgment standard, courts in the Third Circuit require: (a) that there be sound business judgment reasons for the sale; (b) accurate and reasonable notice of the sale; (c) that the sale yield a fair and reasonable price; and (d) that the parties have acted in good-faith. *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa 1991). This Court may additionally grant the relief requested herein under § 105(a) of the Bankruptcy Code under equitable common law doctrines, providing, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

26. Sound business reasons exist to justify a sale of the Property. The proceeds to be generated by the Sale of the Property will provide satisfaction of the secured claim of the Bank. Additionally, any additional proceeds from the Sale will contribute to the funds generated to pay ongoing administrative expense and creditors through the Plan.

27. Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." The paramount goal of any proposed sale of the Debtor's property is to maximize the value of the sale proceeds received by the bankruptcy estate. *See Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 573 (3d Cir. 2003) (the debtor has the "fiduciary duty to maximize the value of the bankruptcy estate").

28. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 659 (S.D.N.Y. 1992); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (S.D.N.Y. 1991).

29. The implementation of competitive bidding procedures to facilitate the sale of a debtor's estate outside of the ordinary course of business have been approved by bankruptcy courts in this District as a means of ensuring that such sale will generate the highest and best return for a debtor's estate. *See e.g.*, *In re R.E. Gas Development, LLC.,* No. 18-22032 (JAD) [Doc. No. 370] (Bankr. W.D. Pa. June 29, 2018); *In re Max & Erma's Rest., Inc.,* Case No. 09-27807-MBM (Bankr. W.D. Pa July 22, 2010).

30. The Plan Administrator submits that the Bidding Procedures set forth above establish the parameters under which the value of the Real Property may be established and maximized at the Auction. The proposed Bidding Procedures will enhance competitive bidding; therefore, such procedures will increase the likelihood that the Plan Administrator will receive the greatest possible consideration for the Real Property by ensuring a competitive and fair bidding process.

## II.     BREAK UP FEE

31. The Agreement of Sale contains provisions for a break-up fee in the amount of Twenty-Five Thousand Dollars ($25,000.00) (the "Break-Up Fee").

32. The Agreement of Sale, including the Break-Up Fee, was negotiated by the Plan Administrator and Stalking Horse Bidder at arms' length and is not tainted by self-dealing or manipulation. The Stalking Horse Bidder has advised the Plan Administrator, and the Plan Administrator reasonably believes that, without the Break-Up Fee, the Stalking Horse Bidder would not have agreed to make an offer to purchase the Real Property as provided in the Agreement of Sale.

33. The payment of the Break-Up Fee is reasonable based upon the third party expenses and costs incurred by the Stalking Horse Bidder in connection with the Real Property and the Agreement of Sale and the transactions contemplated thereby, including due diligence efforts and the reasonable.

34. Further, the Minimum Overbid is set at $50,000.00 above the Stalking Horse Bid. Thus, to the extent that the Stalking Horse Bidder is not ultimately the Successful Bidder, the $25,000.00 Break-Up Fee will leave at least an additional $25,000.00 of net proceeds for the estate above the Stalking Horse Bid.

35. Approval of the Bid Procedures Order requires a determination that the Stalking Horse Bidder shall have the right to payment of the Break-Up Free as an administrative claim under Section 503 of the Bankruptcy Code. *See In re O'Brien Environmental Energy,* 181 F.3d 527 (3d Cir. 1999).

36. Accordingly, the debt must (i) arise from a post-petition transaction giving rise to the claim, (ii) provide a benefit to the estate, and (iii) be necessary to preserve the value of the assets. *See O'Brien*, 181 F.3d at 527.

37. The Plan Administrator submits that the applicable standard in the Third Circuit is met inasmuch as the Stalking Horse Bidder has given him a starting bid for a potential Auction and has provided the best opportunity for competitive bidding for the sale of the Real Property.

38. Accordingly, the Plan Administrator requests approval of the allowance and payment of the Break-Up Fee in full as it provides the benefit required under *O'Brien*, *supra*, by enabling the Plan Administrator to realize the highest and best price for the Real Property.

39. If the Stalking Horse Bidder is not the Successful Bidder at the Auction, the Plan Administrator will give prompt notice to the Stalking Horse Bidder of the Successful Bidder (including, if applicable, any Back-Up Bidder), together with the date of the closing scheduled with the Successful Bidder.

40. If the Stalking Horse Bidder is not the Successful Bidder, the Plan Administrator requests authorization to pay the Break-Up Fee in full within fourteen (14) days of the closing.

### III.     NOTICE PROCEDURES

41. Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." The paramount goal of any proposed sale of the Debtor's property is to maximize the value of the sale proceeds received by the bankruptcy estate. *See Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 573 (3d Cir. 2003) (the debtor has the "fiduciary duty to maximize the value of the bankruptcy estate").

42. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 659 (S.D.N.Y. 1992); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (S.D.N.Y. 1991).

43. The Plan Administrator submits that the continued marketing conducted by the Broker and the deadlines set forth above establish the parameters under which the value of the Real Property may be established and maximized at the Auction.

44. Under Fed. R. Bank. P. 2002(a), (c), (d) and (k), the clerk or some other person as the Court may direct is required to notify the debtor, the trustee, all creditors, and indenture trustees of the proposed sale of real property, including a disclosure of the time and place of any public sale, the terms and conditions of the sale, and the deadline for filing any objections.

45. The Plan Administrator requests approval of the Sale Notice substantially in the form attached to the Motion as **Exhibit B.** Within three business days after entry of an order approving this Sale Notice (the "Sale Notice Order"), the Plan Administrator shall serve or caused to be served by first-class the Sale Notice, upon: (i) the United States Trustee for the Western District of Pennsylvania; (ii) the Stalking Horse Bidder, (iii) all parties that are known to have asserted a security interest, lien, interest or claim in the

Property; (iv) all applicable state and local taxing authorities and regulatory agencies, (v) all parties the Plan Administrator has determined have demonstrated an interest in the Property and financial capability to consummate the sale; and (vi) all creditors and parties in interest identified on the creditor mailing matrix.

46. The Plan Administrator submits that Sale Notice constitutes adequate and reasonable notice of the key dates and deadlines for the Sale, including the bid deadlines, Auction, objection deadlines, and the Sale Hearing.

47. The Plan Administrator reserves its rights to modify these deadlines and/or procedures in its reasonable business judgment, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Property, including, without limitation, adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction.

WHEREFORE, the Plan Administrator requests entry of an order, in substantially the same form as attached hereto, (i) authorizing and scheduling an auction; (ii) authorizing payment of Break-Up Fee if the Stalking Horse Bidder is not the Successful Bidder, (iii) authorizing the Sale of the Debtor's Property pursuant to the Debtor's Plan; and (iv) approving certain deadlines and the form, manner, and sufficiency of notices.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

Dated: January 12, 2021

By:*/s/ Sarah E. Wenrich*
Sarah E. Wenrich, Esq.
PA I.D. No. 325834
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135
swenrich@bernsteinlaw.com
*Counsel to the Plan Administrator, Robert S. Bernstein, Esq.*