## AGREEMENT OF SALE

THIS **AGREEMENT OF SALE** (this "**Agreement**") is made and entered into as of this ___ day of _____, 2020, by and between **5171 Campbells Land Co, Inc.**, a Pennsylvania corporation (the "**Seller**"), and _____ (or its affiliate), a_____ with a place of business at _____ (the "**Buyer**").  Buyer and Seller are each individually sometimes referred to herein as a "**Party**," and collectively as the "**Parties.**"

### RECITALS

A.  Seller is the owner of that certain real property situate in Allegheny County, Commonwealth of Pennsylvania at 5171 Campbells Run Road, Pittsburgh, PA 15205 located in Robinson Township containing approximately 1.0583 acres of land, and being designated as Block and Lot 0334-G-00015, as more particularly described on Exhibit A attached hereto and incorporated herein, together with all easements, rights and privileges appurtenant thereto (the "**Property**");

B.  The Seller filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "**Court**"), at case number 19-22715-CMB; and

C.  Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, all of Seller's right, title and interest in and to the Property, subject to the terms and conditions set forth in this Agreement and an order of the Court to be entered authorizing the sale of the Property as contemplated herein (the "**Sale Order**") following an auction sale (the "**Auction Sale**") conducted in accordance with the deadlines set forth in the Sale Notice (the "**Sale Notice**") and Sale Order.

NOW, THEREFORE, in consideration of the mutual promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer, intending to be legally bound hereby, covenant and agree as follows:

1.  Recitals.  The foregoing recitals are adopted by reference and made a part of this Agreement as though fully restated herein.

2.  Effective Date.  Seller and Buyer acknowledge and agree that, notwithstanding the date of this Agreement first set forth in the preamble above or anything else contained herein to the contrary, this Agreement shall not be effective and binding upon the Seller until the date that the Court enters the Sale Order (the "**Effective Date**").  Notwithstanding the foregoing, Seller hereby agrees not to enter into any agreement(s) of any kind or nature whatsoever with any third party for the sale or occupancy of the Property from the date hereof until the Effective Date; provided, however, if for any reason whatsoever the Court does not authorize the sale of the Property to Buyer as contemplated herein or approves another person as the successful bidder for the Property, then Seller may terminate this Agreement, at which time the Parties shall have no further rights or obligations hereunder, except for any rights or obligations which expressly survive termination herein.

3.  Sale and Purchase.

(a)  Subject to the terms and conditions set forth herein, at the time of settlement under this Agreement (the "**Closing**"), Seller agrees to sell and convey the Property to Buyer, and Buyer agrees to purchase and accept the Property from Seller.  Except as otherwise set forth in this Agreement, the Property is being sold, transferred and delivered, and shall be accepted by Buyer, "AS IS, WHERE IS" without any representation or warranty whatsoever, including, without limitation, any warranty of merchantability or fitness for a particular purpose, any and all representations and warranties with respect to the Property being expressly disclaimed.

4.  Purchase Price.  The purchase price for the Property (the "**Purchase Price**") shall be _____ Dollars ($_____).  The Purchase Price shall be payable in the following manner:

(a)  Prior to the Auction, Buyer shall deposit with Robert S. Bernstein, Esq., or a mutually-agreeable title company (the "**Title Company**") the sum of Fifty Thousand and 00/100 Dollars ($25,000.00) (the "**Deposit**"), said Deposit and any interest thereon to be applied to the Purchase Price at the time of Closing.  The Deposit shall be deemed to be earned and non-refundable to Buyer, unless the transaction contemplated hereby does not close due to a default by Seller hereunder or if this Agreement is terminated pursuant to Sections 12(a), (c) or (d) hereof, in which case the Deposit will be promptly returned to Buyer, together with any interest earned thereon; and

    (b)    At Closing, Buyer shall pay the balance of the Purchase Price (after credit for the Deposit and alteration for all adjustments and prorations provided for herein, if any) in immediately available funds.

5.    <u>Closing</u>.

    (a)    Closing shall be held on a date to be designated by the Court or, if so permitted by the Court, on a date designated by mutual agreement of the Parties, but in no event later than thirty (30) days after entry of the Sale Order by the Court, or further ordered by the Court (the "**Closing Date**"). On the Closing Date, the Closing shall take place with the Title Company at such time and in such location as may be designated by mutual agreement of Buyer and Seller. In lieu of making a personal appearance at the place of Closing, either Party may cause its documents and other deliveries to be delivered and tendered in escrow with the Title Company on or prior to the Closing Date.

    (b)    At or prior to the Closing Date, Seller shall deliver to Buyer:

        (i)    A deed for the Property, subject to the Permitted Encumbrances (as such term is defined in Section 14 hereof), duly executed and acknowledged by Seller and in proper form for recording;

        (ii)    A duly executed settlement statement; and

        (iii)    Any certificates, affidavits or other instruments as may be reasonably required by the Title Company as a condition to completion of Closing and issuance of any owner's policy of title insurance, provided, the same are normally and customarily required for a transaction of the type contemplated herein.

    (b)    At or prior to the Closing Date, Buyer shall deliver to Seller:

        (i)    The balance of the Purchase Price required in Section 4, in the amount and form required thereby;

        (ii)    A duly executed settlement statement; and

        (iii)    Such other affidavits and documents as are otherwise required to consummate the transaction contemplated by this Agreement.

6.    <u>Prorations/Expenses</u>.

    (a)    <u>Prorations and Adjustments</u>. The following items shall be adjusted and prorated as of the Closing Date between Seller and Buyer as follows:

        (ii)    Charges for water, electricity, sewer rental, gas, if any, and all other utilities shall be prorated on a per diem basis as of the date of Closing, disregarding any discount or penalty and on the basis of the fiscal year or billing period of the authority or utility or other charging for the same. If bills for any of the foregoing have not been issued prior to the Closing Date, the charges therefore shall be adjusted at the Closing Date on the basis of charges for the prior period for which bills were issued and shall be further adjusted when the bills for the current period are issued. Buyer shall arrange, with Seller's good faith cooperation, to cause the transfer of all existing utility accounts for all utility services provided to the Property into the name of Buyer (or, alternatively, to cancel any such utility accounts, if so desired by Buyer) on or before the Closing Date.

        (iii)    The Parties anticipate no realty transfer taxes will be owed in connection with the transfer of the Property from Seller to Buyer as contemplated hereunder in light of the Closing occurring after the effective date of the Court's confirmation of a plan under chapter 11 of the Bankruptcy Code in the Seller's above-referenced chapter 11 bankruptcy proceeding. To the extent realty transfer taxes are determined to be owed in connection with the transfer of the Property from Seller to Buyer as contemplated hereunder, such realty transfer taxes, if any, shall be split and divided equally between Buyer and Seller.

    (b)    <u>Expenses</u>. Each Party shall be responsible for its own expenses incurred in connection with this Agreement and the transactions contemplated hereby, including, without limitation, (i) all costs and expenses stated herein to be borne by a Party, and (ii) all of such Party's respective accounting, legal and appraisal fees, if any. Seller shall pay for the cost of deed preparation and any matters of title clearance not otherwise discharged by the Court. Buyer shall pay for the cost of recording the deed, title search, title policy and survey of the Property, if any.

7. <u>Operations Prior to Settlement</u>.  Between the date of this Agreement and the Closing Date (or the earlier termination hereof, as applicable):

 (a) Seller shall deliver to Buyer copies of any written notice(s) relating to the Property received by Seller from any governmental authorities; and

 (b) Seller shall not, and shall cause its owners, affiliates and representatives not to, (i) sell, or otherwise transfer the Property or allow any new or additional encumbrances on or affecting the Property, (ii) directly or indirectly solicit, initiate, accept or encourage any inquiries or proposals from, discuss or negotiate with, any third party relating to the sale or transfer of the Property, (iii) enter into a back-up contract with any third party relating to the Property, (iv) operate the Property outside of the ordinary course of business and consistent with past practice, or (v) otherwise circumvent the terms of this Agreement.

8. <u>Possession</u>.  Possession of the Property shall be delivered to Buyer on the Closing Date.

9. <u>Conditions to Closing</u>.

 (a) The obligations of Buyer under this Agreement to purchase the Property are subject to the satisfaction at Closing of the following conditions precedent:

  (i) All representations and warranties made by Seller set forth in this Agreement shall be true and correct, at and as of Closing, in all respects as though such representations and warranties were made on, at and as of Closing;

  (ii) Seller has performed, observed and complied with all material covenants, agreements and conditions required by this Agreement to be performed, observed and complied with prior to or as of the Closing Date;

  (iii) No injunction shall have been obtained restraining, delaying or prohibiting, and no suit, action or other legal proceeding shall be pending before any court, arbitral panel or government authority in which it is sought to restrain, delay or prohibit any of the transactions contemplated by this Agreement; and

  (iv) The Court shall have entered the Sale Order, which shall be in full force and effect.

 (b) The obligations of Seller under this Agreement to sell the Property are subject to the satisfaction at Closing of the following conditions precedent:

  (i) All representations and warranties made by Buyer set forth in this Agreement shall be true and correct, at and as of Closing, in all respects as though such representations and warranties were made on, at and as of Closing;

  (ii) Buyer has performed, observed and complied with all material covenants, agreements and conditions required by this Agreement to be performed, observed and complied with prior to or as of the Closing Date;

  (iii) No injunction shall have been obtained restraining, delaying or prohibiting, and no suit, action or other legal proceeding shall be pending before any court, arbitral panel or government authority in which it is sought to restrain, delay or prohibit any of the transactions contemplated by this Agreement; and

  (iv) The Court shall have entered the Sale Order, which shall be in full force and effect.

10. <u>Representations and Warranties of Seller</u>.  Seller represents and warrants to Buyer as follows:

 (a) Seller has the right and power to execute and deliver this Agreement, to perform Seller's obligations under this Agreement and to consummate all transactions on Seller's part contemplated hereunder and upon execution and delivery by Seller, this Agreement shall constitute the legal, valid and binding obligation of Seller subject to the Sale Order.

 (b) The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof will not result in a breach of any of the terms or provisions of, or constitute a default under, any agreement of Seller or any

instrument to which Seller is a party or by which Seller or the Property is bound, or any judgment, decree or order of any court or governmental body, or any applicable law, rule or regulation.

(c)    There are no rights, options or other agreements of any kind to purchase or otherwise acquire or sell or otherwise dispose of any of the Property, or any interest therein, nor, to Seller's actual knowledge, any claims to such rights, options or other agreements.

The representations and warranties stated in this Section 10 and in other Sections of this Agreement shall be true as of the date hereof and as of the Closing Date.

11.    <u>Representations, Warranties and Acknowledgements of Buyer</u>.  Buyer represents and warrants to Seller as follows:

(a)    Buyer has the full and unrestricted right and power to execute, deliver and perform Buyer's obligations under this Agreement and to consummate all transactions on Buyer's part contemplated hereunder and upon delivery by Buyer, this Agreement shall constitute the legal, valid and binding obligation of Buyer.

(b)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof will not result in a breach of any of the terms or provisions of, or constitute a default under, any agreement of Buyer or any instrument to which Buyer is a party or by which Buyer is bound or any judgment, decree or order of any court or governmental body or any applicable law, rule or regulation.

(c)    Buyer hereby acknowledges, agrees and expressly understands that the sale of the Property will be conducted pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule of Procedure 4001.

(d)    Buyer hereby agrees and acknowledges that, except as otherwise expressly set forth in this Agreement, neither Seller nor any of its principals (direct or indirect), affiliates, agents, attorneys, employees or representatives has made, and Seller hereby expressly disclaims, any representation or warranty whatsoever regarding the Property and the subject matter of this transaction, or any part thereof, including (without limiting the generality of the foregoing) (i) any warranty provided for under statutory or common law or the uniform commercial code (including, but not limited to, warranties of merchantability and fitness for a particular purpose); (ii) any representation as to the physical nature or physical condition of the Property or the capabilities thereof; (iii) the existence of patent or latent defects in construction of the improvements on the Property or the availability of utilities; or (iv) the status of building code, zoning or other applicable governmental requirements of whatever kind regarding the Property or any intended use of the Property, including, without limitation, the status of any permit, application, license, approval, certificate or other intangible right of whatever kind regarding the Property.  Buyer acknowledges and agrees that Buyer, in executing, delivering and/or performing this Agreement, does not rely upon any statement and/or information to whomever made or given, directly or indirectly, orally or in writing, by any individual, firm or entity unless such statement or information is expressly incorporated herein.  Accordingly, Buyer represents that, subject to the express representations of Seller made herein, the acquisition of the Property shall be on an "AS IS, WHERE IS" basis as of the Closing.  Buyer acknowledges that Buyer will conduct such investigations of the Property, including but not limited to, the physical and environmental conditions thereof, as Buyer deems necessary or desirable to satisfy itself as to the condition of the Property.  Upon Closing, Buyer shall assume the risk of any adverse matters with respect to the Property, including, but not limited to, construction defects and adverse physical and environmental conditions that may not have been revealed by Buyer's investigations. Buyer agrees that should any cleanup, remediation or removal of hazardous substances or other environmental conditions on the Property be required after the Closing, insofar as Seller and Buyer are concerned, Seller shall not have any responsibility for such cleanup, removal or remediation. The provisions of this subsection shall survive Closing.

(e)    WITHOUT LIMITING THE PROVISIONS OF SUBPARAGRAPH (d) OF THIS SECTION AND NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, BUYER HEREBY RELEASES SELLER AND (AS THE CASE MAY BE) SELLER'S OFFICERS, DIRECTORS, MEMBERS, SHAREHOLDERS, TRUSTEES, PARTNERS, EMPLOYEES, MANAGERS, AFFILIATES AND AGENTS, FROM ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT), LOSSES, DAMAGES, LIABILITIES, COSTS, AND EXPENSES (INCLUDING ATTORNEY'S FEES AND EXPENSES, WHETHER OR NOT SUIT IS INSTITUTED), ARISING FROM OR RELATING TO ANY DEFECT IN THE PROPERTY, THE LEGAL STATUS OF ANY AGREEMENT WITH RESPECT THERETO, AND THE PHYSICAL CONDITION OF THE PROPERTY OR ANY PART THEREOF, INCLUDING, BUT NOT LIMITED TO, ANY ENVIRONMENTAL CONDITION.  THE RELEASE SET FORTH HEREIN DOES NOT APPLY TO THE EXPRESS REPRESENTATIONS OR WARRANTIES OF SELLER SET FORTH IN THIS AGREEMENT OR ANY INDEMNITY OR WARRANTY EXPRESSLY MADE BY SELLER IN ANY DOCUMENT DELIVERED AT CLOSING.  THE PROVISIONS OF THIS SUBSECTION SHALL SURVIVE CLOSING.

12. <u>Termination of Agreement</u>.  This Agreement may be terminated at any time prior to the Closing Date as follows or as otherwise set forth in this Agreement:

(a) at any time prior to the Closing Date by the mutual written consent of the Seller and Buyer;

(b) by Seller by written notice to Buyer if Buyer materially breaches or violates any provision(s) of this Agreement;

(c) by Buyer by written notice to Seller if Seller materially breaches or violates any provision(s) of this Agreement and fails to cure such breach or violation within thirty (30) days of written notice thereof from Buyer to Seller; or

(d) by Seller in the event that, pursuant to the Auction Sale, Buyer is not the successful bidder.

If Seller properly terminates this Agreement pursuant to Section 12(b), then the Title Company shall deliver the Deposit to Seller.  If Seller or Buyer properly terminate this Agreement pursuant to Sections 12(a), (c) or (d), then the Title Company shall return the Deposit to Buyer.

13. <u>Bankruptcy Code Section 363(m)</u>.  Buyer and Seller acknowledge and agree that the Buyer is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and is thereby entitled to Bankruptcy Code protection afforded good faith, arm's length purchasers.  The Seller further acknowledges that the Buyer has negotiated in good faith and at arm's length with the Seller.

14. <u>Quality of Title</u>.  Except to the extent specifically provided for in this Agreement, the Property shall be sold, conveyed, transferred and delivered by Seller to Buyer at the Closing free and clear as authorized by the Court, including, if applicable, of any and all liens, mortgages, pledges, security interests, real estate taxes, restrictions, judgments, prior assignments, liabilities, obligations, encumbrances, charges, tenancies, licenses, covenants, successor or transferee liabilities and claims of any and all nature and description whatsoever, except for the Permitted Encumbrances.  For the purposes of this Agreement, "**Permitted Encumbrances**" shall mean exceptions to the title to the Property that would be standard in a title policy issued by an independent title insurance company, such as easements of record and liens for taxes not yet payable, which do not adversely affect the use and enjoyment of the Property.

15. <u>Notices</u>.  All notices, requests, demands or other communications to or upon any Party to this Agreement shall be in writing and shall be deemed given (a) when delivered personally; (b) on the second business day after being deposited in the U.S. mail, by registered or certified mail, return receipt requested, postage prepaid; (c) on the date received by receipted overnight courier; or (d) on the date sent by facsimile or by e-mail, so long as such facsimile or e-mail is followed by deposit in the U.S. mail by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address as may designated in writing by such Party to the other Party:

If to Seller:    5171 Campbells Land Co., Inc.
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Attn: Robert S. Bernstein, Esq.
Telephone:    412-456-8100
Facsimile:    412-456-8135
Email:  rbernstein@bernsteinlaw.com

If to Buyer:    _____

16. <u>Eminent Domain</u>.  If the Property or any part thereof is taken by eminent domain after the Effective Date of this Agreement and prior to Closing and, in the commercially reasonable opinion of Buyer, such taking would materially interfere with Buyer's intended use of the Property, Buyer shall have the option to: (a) terminate this Agreement by written notice to Seller, whereupon the Deposit shall be returned to Buyer and Seller and Buyer shall be relieved of all obligations and liability hereunder, except for those obligations and/or liabilities which expressly survive the termination hereof; or (b) elect to proceed with this Agreement and pay the full consideration, in which event Seller shall assign to Buyer all damages to which Seller may be entitled and which may be assigned by Seller pursuant to the Pennsylvania Eminent

Domain Code, 26 P.S. §1-101 et seq., as amended.  Within ten (10) days after notification of any such taking, but in no event later than the Closing Date, Buyer shall provide Seller with written notification of its election pursuant to the foregoing sentence.

17.  <u>Municipal or Other Governmental Improvements</u>.  Buyer shall pay for all work and improvements resulting in an assessment against the Property, and all special or other assessments for public or other improvements, where an ordinance or resolution authorizing such work, improvement or assessment is adopted or approved by a municipal or other public body or authority, regardless of whether such assessment is levied, and/or such ordinance or resolution is adopted, before or after the Closing Date.

18.  <u>Brokers</u>.  Except for the brokers for the Seller, and the real estate firm of Hanna Langholz Wilson Ellis, and broker for Buyer_____, Buyer and Seller each represents and warrants to the other that no other real estate broker or third party has been involved in this transaction and each covenants and agrees to pay, hold harmless and indemnify the other from and against any and all cost, expense (including reasonable attorney's fees) or liability for any compensation, commissions or charges claimed by any broker or agent with whom the indemnifying Party dealt with respect to the Property, this Agreement, or the intended transaction.  Without limiting the foregoing, each Party shall be solely responsible for the commissions of its broker hereunder pursuant to a separate commission agreement.  The provisions of this Section shall survive the Closing and any termination of this Agreement.

19.  <u>Certification of Non-Foreign Status of Seller</u>.  Section 1445 of the U.S. Internal Revenue Code of 1986, 26 U.S.C. §1445, as amended (the Foreign Investment in Real Property Tax Act of 1980, 26 U.S.C. §861 et seq., as amended) provides that a buyer of property located in the United States must withhold tax if the seller is a foreign person.  Seller hereby certifies that Seller is not a foreign person within the meaning of Section 1445(b)(2) of the Internal Revenue Code.  Seller understands that this certification may be disclosed to the Internal Revenue Service and that any false statement contained herein could be punished by fine, imprisonment or both.

20.  <u>Default</u>.  In the event of a default by Seller in the performance of the covenants and agreements made by Seller hereunder, Buyer's sole remedy shall be to terminate this Agreement and the return of the Deposit.  In the event of a default by Buyer in the performance of the covenants and agreements made by Buyer hereunder, Seller's sole remedy hereunder shall be to terminate this Agreement and retain the Deposit as liquidated damages.  The Parties agree that Seller's actual damages, in the event of such a default by Buyer, would be extremely difficult or impracticable to determine.  Therefore, the Parties acknowledge that the Deposit has been agreed upon, after negotiation, not as a penalty, but as the Parties' reasonable estimate of Seller's damages in the event of such a default hereunder.

21.  <u>Good Faith and Reasonableness Implied</u>.  In all matters contained herein, both Parties shall have an implied obligation of good faith and reasonableness.

22.  <u>Entire Contract</u>.  This Agreement constitutes the entire contract between the Parties hereto, and there are no other understandings, oral or written, relating to the subject matter hereof.  This Agreement may not be changed, modified or amended, in whole or in part, except in writing signed by all Parties hereto.  Wherever used in this Agreement, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

23.  <u>Assignment</u>.  The obligations and duties under this Agreement may not be assigned or transferred, in whole or in part, by operation of law or otherwise, by any Party and any attempt to do so shall be null and void.  The Buyer reserves the right to designate an assignee of this Agreement provided such assignee is an affiliate of Buyer and honors, fulfills and expressly assumes Buyer's obligations and duties hereunder pursuant to a written instrument satisfactory to Seller and, if applicable, the Court.

24.  <u>Contract Formation; Counterparts</u>.  This Agreement is effective only upon execution and delivery by both Parties hereto.  This Agreement may be executed in any number of counterparts, each of which, when executed, shall be deemed an original.  Each Party may rely upon a facsimile or "pdf" counterpart of this Agreement signed by the other Party with the same effect as if such Party had received an original counterpart signed by such other Party.

25.  <u>Headings</u>.  The headings preceding the text of the paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

26.  <u>Choice of Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania and title 11 of the United States Code, without regard to principles of conflicts of laws.

27.  <u>Jurisdiction</u>.  The Parties agree that the Court shall retain jurisdiction to enforce the provisions of this Agreement, any Order of Court, including but not limited to the Sale Order, stemming from this Agreement, or any other applicable Order of Court.

28. <u>Further Assurances</u>.  Each Party shall execute and deliver such instruments and take such other actions as shall be reasonably required, or as shall be reasonably requested by any other Party, in order to carry out the purpose of this Agreement and otherwise give effect to this Agreement, at or prior to and after the Closing Date.

29. <u>Joint Negotiation and Drafting</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event of any ambiguity or question of intent or interpretation hereunder, this Agreement shall be construed in accordance with the immediately preceding sentence and no presumption or burden of proof shall favor or disfavor any Party by virtue of the authorship of any provision of this Agreement.

30. <u>Coal Notice</u>.  NOTICE:  THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND.  THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.  (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended, and is not intended as notice of unrecorded instruments, if any).

[*THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY BLANK*]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed and delivered this Agreement as of the date and year first above written.

**SELLER**:
**5171 Campbells Land Co., Inc.**, a Pennsylvania corporation

By: _____
Name: _____
Title: _____

**BUYER**:

By: _____
Name: _____
Title: _____